[No. 1732.]

THE STATE OF NEVADA, RESPONDENT, v. C. A. PRAY AND W. J. LANGDON, APPELLANTS.

1. FINES — PAYMENT — PAYMENT UNDER PROTEST — EFFECT — STATUTORY PROVISIONS. Criminal practice act, sec. 453 (Comp. Laws, 4418), provides that, if the judgment is a fine and imprisonment, defendant shall be committed to the custody of the proper officer, and by him detained until the judgment is complied with. Section 479 of the act (Comp. Laws, 4444) provides that no appeal from a judgment of conviction other than for a fine only shall stay execution, but the defendant shall remain in custody to abide the judgment on appeal, unless admitted to bail. Section 666 of the act (Comp. Laws, 4631) requires the clerk to pay the balance of fines remaining in his hands to the county treasurer. Section 667 of the act (Comp. Laws, 4632) requires the clerk to pay over fines received within thirty days, and makes failure to do so a misdemeanor. Comp. Laws, 1208, 4645, require the payment of such funds to the state treasurer, and under the law they become part of the state school fund, and under Comp. Laws, 1987, can be paid out only on the warrant of the state controller pursuant to law. Accused was convicted and fined, with the proviso that in the default of payment he should be imprisoned at the rate of one day for each two dollars thereof. An appeal was taken, and a stipulation between counsel for accused and the district attorney showed that the accused paid the fine under protest, that it was held by the clerk pending the outcome of the appeal, and that the district attorney was willing to permit accused to have his full rights on appeal, and the money returned if the appeal resulted in his favor. *Held*, that neither the clerk nor any one else had any power to make any disposition of the fine other than that provided by statute, and the arrangement made was void, and, since accused was at liberty without bail, the judgment for the fine could only be treated as paid.

2. CRIMINAL LAW — APPEAL — DISMISSAL — GROUNDS — PAYMENT OF FINES. Where an order appealed from is of such a nature that its execution has left nothing upon which a judgment of reversal can operate, the appeal will be dismissed unless such right was especially reserved; hence, where one convicted of a crime has paid his fine under protest,

attempting to reserve his rights on appeal, but such reservation is void, an appeal from the judgment will be dismissed, since the money could not be returned to him, and no effectual relief could be granted.

3.  SAME—VENUE—RECEIVING STOLEN GOODS.   The rule of the common law requiring that an indictment be found in the county where the crime was committed prevails in Nevada, and, while the crime of larceny is an exception to the rule, in the absence of statute the venue of the crime of receiving stolen goods is in the county where they are received, and not in the county where they are stolen, nor the one to which they are subsequently taken.

4.  RECEIVING STOLEN GOODS—ELEMENTS OF OFFENSE—STATUTORY PROVISIONS. Under crimes and punishments act, sec. 65 (Comp. Laws, 4719), providing that every person who, for his own gain or to prevent the owner from again possessing his property, shall buy or receive stolen goods, knowing the same so to have been obtained, shall upon conviction be imprisoned, etc., there are three material and essential elements of the offense, to wit:  The person charged must receive or buy the property; he must know that the property was stolen, and there must be a purpose or intent to prevent the owner from again possessing the property, or to accomplish the receiver's own gain.

5.  SAME—TIME OF WRONGFUL ACT—INTENT.   The wrongful intent, being a necessary ingredient of the crime, must exist at the time of the buying or receiving of the stolen goods.

6.  CRIMINAL LAW—VENUE—STATUTORY PROVISIONS—OFFENSE PARTIALLY COMMITTED IN DIFFERENT COUNTIES.   Criminal practice act, sec. 85 (Comp. Laws, 4055), provides that when a public offense is committed in part in one county and in part in another, or the acts or effects thereof constituting or requisite to the consummation of the offense occur in two or more counties, the jurisdiction shall be in either county.  Stolen goods were purchased, paid for, and received by accused in E. County, and were thereafter shipped by him to C. County.  *Held*, that C. County had no jurisdiction of the offense, since the offense of receiving stolen goods is consummated when the goods are received with the unlawful intent specified in the statute, and the subsequent transportation of the goods into another county to reap the fruits of the crime is not an act essential to the consummation of the crime, and, if the effect of the transportation of the goods to C. County constituted the intent to deprive the owner of the property, the act of receiving was not accompanied by the wrongful intent necessary to constitute the crime.

7.  RECEIVING STOLEN GOODS — PLACE OF OFFENSE — VARIANCE.   Where the evidence, in a prosecution in C. County for receiving stolen property, merely shows that the stolen property was purchased by accused in E. County, the indictment is not sustained by the proof, and the judgment should be reversed on appeal.

APPEAL from the District Court of the Second Judicial District of the State of Nevada, Churchill County; *W. H. A. Pike*, Judge.

C. A. Pray and W. J. Langdon were convicted of receiving

stolen goods, and appealed from the judgment and an order denying motion for a new trial. **Pray's appeal dismissed. On appeal of Langdon reversed and remanded.**

The facts sufficiently appear in the opinion.

*Lewers & Huskey*, for Appellants:

I.   At common law all criminal prosecutions are local, and an indictment can . be found and prosecution had only in the county in which the crime has been committed.   (12 Cyc. 229; 22 Ency. Pl. & Pr. 821; 1 Bishop on Crim. Procedure, 65; *Campbell* v. *People*, 109 Ill. 565, 50 Am. Rep. 621.)   The common law of England, in so far as it has not been changed by the Constitution and laws of the United States and of the State of Nevada, is the law of this state.   (Comp. Laws, 3095.)   The only apparent exception to the common-law rule of venue is in the case of larceny where it is . held that the thief may be prosecuted, not only where the goods were first feloniously taken, but in any county through or into which the property has been carried.   Strictly speaking, it is not a real exception, since the common law holds that a new larceny is committed in each jurisdiction into which the goods were carried by the thief.   (*Campbell* v. *People*, 109 Ill. 565, 50 Am. Rep. 623; *State* v. *Brown*, 8 Nev. 208.)   At common law the above rule was confined strictly to larceny, but in Nevada the rule has been enlarged by statute so as to give a like jurisdiction where goods have been taken by burglary, robbery, and embezzlement, but with these offenses, as with larceny, the rule only applies where the original offender is found with the goods in his possession.

II.   The offense of receiving stolen goods is committed where the goods are received, and not elsewhere.   Carrying afterwards is not a new receiving.   (*Campbell* v. *People*, 109 Ill. 565; *Licette* v. *State*, 75 Ga. 253; *Thurman* v. *State*, 40 S. W. 765.)

III.   To recapitulate, we submit that the common law respecting jurisdiction or venue in the crime of larceny has not been changed in Nevada, but that the statute is simply declaratory thereof (*State* v. *Brown*, 8 Nev. 208); that the common-law rule in larceny has simply been broadened by

Comp. Laws, 4060, so as to include punishment of burglary, robbery, or embezzlement, as well as larceny, in the county where the perpetrator of such crime is found with the goods; that there is no statute in Nevada placing venue in two or more counties for the crime of buying or receiving stolen goods, and that the crime now under consideration was committed, if at all, in Goldfield, Esmeralda County, Nevada, more than two hundred miles from where in said indictment it was alleged to have been committed, and not only outside the County of Churchill, but far beyond the borders of the Second Judicial District.

IV.   Concealment, while it may tend to show guilty knowledge, is not an essential element of the crime of receiving stolen goods. (*Thurman* v. *State*, 40 S. W. 765; *Holtz* v. *State*, 30 Ohio St. 486.)   The case of *Thurman* v. *State* has already been stated and quoted at length.   In *Holtz* v. *State* we find the following statement: "Concealment would, if proven, tend to show guilty knowledge.   It might be therefore proved, not to support the allegation, that he did conceal, but to establish scienter.   The offense would be completely proved when it appeared from the testimony that he knowingly bought stolen goods."   The words "for his own gain" and "to prevent the owner from again possessing his property," found in our statute, go only to the intent at the time of the actual buying or receiving the stolen goods.   They do not relate to any act of carrying or concealing after the crime has been committed, nor do they have the effect of making such carrying or concealing an element "constituting or requisite to the consummation of the offense." (*People* v. *Ribolsi*, 89 Cal. 492; *People* v. *Avila*, 43 Cal. 199.)

V.   Section 496 of the California penal code reads as follows: "Every person who, for his own gain or to prevent the owner from again possessing his property, buys or receives any personal property, knowing the same to have been stolen, is punishable by imprisonment in the state prison not exceeding five years," etc.   Under this section, so similar to our Nevada statute, and very probably the section from which our section 4719 was directly quoted, we find the case of *People* v. *Ribolsi*, where defendant was convicted of

feloniously receiving and buying stolen goods for his own gain and profit and to prevent the owner thereof from again possessing them. In rendering this opinion the Supreme Court of California uses the following language: "In cases like this the crime is made out if the accused received or bought the stolen goods, knowing them to be such, either for his own gain or to prevent the owner from again possessing his property; the guilty intent consisting either in receiving or buying them for his own gain or to prevent the owner from again possessing his property." In *People* v. *Avila* the indictment charged the receiving of stolen goods as having been "for his own gain," leaving out the words "or to prevent the owner from again possessing his property." The court in this case said: "It is unnecessary to allege that the defendant received stolen property both for his own gain and to prevent the owner from again possessing his property. The allegation of either intent is, under the statute, sufficient."

*Cheney, Massey & Price*, for Respondent:

I. The question raised in appellants' brief must be determined by the construction of the foregoing section of the criminal law of this state as applied to Comp. Laws, 4055, prescribing the criminal practice. The latter section declares "when a public offense is committed in part in one county and in part in another, or the acts or effects thereof constituting or requisite to the consummation of the offense occur in two or more counties the jurisdiction shall be in either county." (Comp. Laws, 4055.) The general rule at common law is that all offenses, except larceny, are punishable in the county where the offense is committed, and unless section 4055 changes the rule as applied to section 4079, defining the crime of receiving stolen property, we concede that appellants' contention is correct. What, then, are the essential elements of the offense of receiving stolen goods as defined by our statutes? In answering this question we must look to the language defining the crime. Our contention is that there are three material and essential elements constituting this offense, the absence of any one of

which elements will defeat a charge of this character under the law: (a) A person charged must receive or buy the stolen property; (b) he must know that the property was stolen; (c) the purpose or intent to prevent the owner from again possessing the property, or for the receiver's own gain, must also exist. In other words, our contention is that a person who receives or buys stolen goods, knowing them to be stolen, upon proof of such facts is not guilty of the offense defined in the statute. There must be additional proof of the intent or purpose, and, unless such additional intent or purpose is shown, the offense has not been completed and the proof would be insufficient to support a conviction of the offense charged. While there are but few authorities respecting the construction of this act, yet, in some respects directly, and in others by analogy, our contention is maintained. An indictment that charged a person with having received stolen goods, knowing the same to have been so obtained, without further averring the intent to prevent the owner from possessing his property, or the intent for the receiver's own gain, would under the authorities cited in appellants' brief be fatally defective. (*People* v. *Avila*, 43 Cal. 196; *People* v. *Ribolsi*, 89 Cal. 492.)

II. It is elementary that every material averment in an indictment must be proven beyond a reasonable doubt, and failure of proof upon any material averment must result in an acquittal; therefore, the proof of the offense, under our statutes, must be beyond a reasonable doubt upon all three of the necessary averments of the indictment. It is incumbent upon the state to prove beyond a reasonable doubt that the appellants received the property; that when they received it they knew the same to have been stolen, and that it was their purpose or intent to deprive the Goldfield-Mohawk Mining Company of its property.

III. The effects of the proof of the carrying of the property into Churchill County were requisite to the consummation of the offense committed by the defendants as to the element of depriving the owner of again possessing the same; the act of the defendants in carrying the property into Churchill County, and the effect of those acts constituted the

element of the intention to deprive the Goldfield-Mohawk
Company of its property, and such being the case by the sec-
tion referred to, the jurisdiction of the offense was either in
Churchill County or in Esmeralda County. As we have
before stated, the mere purchase of stolen property, knowing
the same to be stolen, is not a completed offense, and a charge
to that effect would not be a sufficient charge in an indict-
ment. The additional purpose of preventing the owner of
again possessing his property must be alleged and proven,
and, when the proof of that purpose and intent is shown by
the acts of the parties in carrying the stolen property into
Churchill County to sell and dispose of, it is proof of that
element of the offense, and proof of those acts is proof of
acts in the consummation of the offense charged. It seems
to us that the language could not import otherwise; that if
it does not mean this it has no meaning. (109 Ill. 572.) Of
the case of *Campbell* v. *People*, cited in the brief, *supra*, it is
sufficient to say that it sheds no light on the case at bar
whatever. Under the Constitution of Illinois the local juris-
diction of all offenses was limited to the county where the
offense was committed. The statute follows the constitu-
tional provision and there was no such statute as our section
4055, and there was no limitation upon the jurisdiction except
the common-law limitation as to larceny, where each aspor-
tation of the property was declared to be a new and sepa-
rate larceny. Outside of the offense of grand larceny every
offense had to be prosecuted in the county where the venue
was laid. (*Licette* v. *State*, 75 Ga. 253.)

IV. The Supreme Court of Tennessee in the case of *Rice*
v. *State*, 3 Heisk. 226, held that the essence of the offense
under their statute of receiving stolen property, knowing it
to be stolen, is that the receipt of the property is accom-
panied by fraudulent intent to deprive the true owner
thereof. In *Hurrell* v. *State*, 5 Humph. 69, it was held
that an indictment charging a person with receiving stolen
property must aver that it was with the intent to deprive
the true owner thereof. And if such is the law in Tennessee,
then the mere receiving stolen property, knowing it to have
been stolen, is not an offense and does not become an offense

until the intent to deprive the owner thereof has been established by facts, the effect thereof constituting the consummation of the offense. In other words, I may receive or purchase stolen property, knowing the same to have been stolen, and without any intent to deprive the owner of the possession of the property or without any purpose for my own gain, but if, after its receipt, with this knowledge, and while it is still in my possession, I remove the property to Churchill County for the purpose of depriving the owner of it, or for the purpose of my own gain, then I have violated this substantive crime, and proof of the removal to Churchill County is proof of an act the effect of which constitutes the consummation of the offense, and the jurisdiction is either in Churchill County or Esmeralda County. It is well in this connection to note the definition of consummation. The Century Dictionary defines the word "consummation" as "accomplishment," "completion," "end," "the fulfillment or conclusion of anything." Now, an act in the fulfillment of the intent to deprive the owner of his property, or an act in completion of the intent to deprive the owner of his property, is an act in the consummation of the offense of receiving stolen property as defined by our statute, and if such act is committed in the county other than where all the acts in the commission of the offense were committed, then the jurisdiction is in either of the counties.

V. The Superior Courts of Kansas and Tennessee both have recognized the elementary principle that the mere intent to commit a crime is not a crime, but that an intent coupled with a criminal act is a crime. Therefore, if any overt act, or the effect of any overt act, was committed by the defendants Pray and Langdon in proof of their intent to deprive the owner of its property or for their own gain in Churchill County, then the offense was committed partly in one county and partly in another, and under the section of our statute the jurisdiction was in either county. The payment of the fine by Pray was a waiver of any right of appeal, and his appeal should be dismissed. It is settled that the appellate court will not determine merely a speculative question, that it will not consider an appeal from a sentence which has

been acquiesced in, or where· the accused has voluntarily paid the fine imposed upon him, and that such acquiescence and payment is a waiver of his right of appeal. And ·that such waiver will be implied from any act on the part of the defendant inconsistent with his intention· to take· an appeal. (*State* v. *Call*, 14 Me. 421; *Batesburg* v. *Mitchell*, 37 S. E. 36; *State* v. *Westfall*, 37 Iowa, 575; *State* v. *Burthe*, 1 South. 652; *Payne* ·v. *State*, 12 Tex. App. 160; *Madsen* v. *Kenner*, 4 Pac. 992.) Pray having paid the fine, his appeal should be dismissed. Both the defendants, having requested the court that if it would impose the penalty by fine, and not· by incarceration in the penitentiary, they would pay off and discharge the fine, by their acts waived their right of appeal. And it is to determine· a mere speculative proposition that this appeal is prosecuted.

*Lewers & Huskey*, for Appellants, in reply:

I. In all crimes, with the exception of a few statutory offenses where no intent whatever is necessary, the act and the intent must accompany each other—that is, they must be simultaneous. (1 Bishop's New Crim. Law, 204–208; 12 Cyc. 147; *State* v. *Gardner*, 5 Nev. 377.) Crime may be committed under either of the following states of mind: (1) With no intent at all, as where a crime results from a negligent act, or in a few public torts, etc. (2) With a general or simple intent to do the act. (3) With a specific intent—that is, with a simple intent to do the act, either intensified by a feeling of malice, hatred, etc., or accompanied by·another and particular intent to accomplish something by means of the act. The former may be illustrated by such crimes as murder, arson and. treason; and the latter (where the double intent is required), by burglary, larceny, assault with intent to kill, malicious destruction of property and receiving stolen goods. (12 Cyc. 147–152.) The words "for his own gain" and "to prevent the owner from again possessing his property," required by our statute in defining the crime of receiving stolen goods, go only to the state of mind or intent necessary at. the time the goods are received—that is, they expressly set out the particular or "specific" intent which

must accompany and be simultaneous with the simple intent to buy or receive the goods. It is elementary that the necessary intent and the act must coincide in point of time. (*People* v. *Ribolsi*, 89 Cal. 492; *People* v. *Avila*, 43 Cal. 196; *People* v. *Tilley*, 135 Cal. 61.)

II. In the case at bar, if Mr. Pray had purchased and received the ore, knowing it to be stolen, but for any legitimate purpose—for example, the purpose of returning it to its rightful owner, or with any other intent not criminal—and had afterwards formed the purpose or intent to take the property for his own gain, the offense of receiving stolen goods would not have been committed. That is, no subsequent mental state or intent is sufficient. The specific intent required by the statute must accompany and be simultaneous with the act.

III. Comp. Laws, 4055, does not, as is claimed by the respondent, abrogate the common-law rule concerning *locus* of crime, but its purpose is to, and it does, prevent the application of the very early rule in criminal law concerning juries. In early times juries were viewers of the fact, and it was necessary that they be from the county where the entire act was committed, otherwise no trial was possible. Thus in murder cases where the blow was struck or the injury inflicted in one county, and death occurred in another, it was necessary, and was the custom, to take the body to the county where the blow was originally struck in order to secure trial.

IV. The motion to dismiss this appeal should be denied, for the reason that a criminal appeal, regularly taken and within the time allowed by law, cannot be attacked by matter outside the record; and for the further reason that inquiry on a motion to dismiss an appeal is limited to ascertaining, first, whether an appeal lies in a given case, and, second, whether it has been regularly taken and perfected. (2 Ency. Pl. & Pr. 347; *Hines* v. *Cochran*, 35 Neb. 828; *Dinet* v. *People*, 73 Ill. 183.) The question whether an appeal lies and is regularly taken must be decided upon the record, and can be determined by the facts appearing only from the record, without the aid of extrinsic circumstances. (2 Ency. Pl. &

Pr. 347; *O'Brien* v. *Smith*, 37 N. Y. St. Rep. 43.) And where opposing affidavits raise conflicting questions of fact, the motion to dismiss will be denied. (2 Ency. Pl. & Pr. 347; *Hill* v. *Hermans*, 59 N. Y. 396; *Lewis* v. *Tilton*, 62 Iowa, 100; *New Orleans Nat. Bk. Asso.* v. *New O. Mut. Ins. A.*, 100 U. S. 43.) The claim of the state that Pray and Langdon waived all error at the trial, and thus abandoned their rights to an appeal by making the statements set forth in the affidavits on file herein, is met and answered by the rule of law that jurisdiction on the subject-matter—that is, the right to try the case—can never be waived. (12 Cyc. 228, and note 43 on p. 229; *People* v. *Granice*, 50 Cal. 447; *People* v. *Du Rell*, 1 Idaho, 44; *Foley* v. *People*, 1 Ill. 57; *State* v. *Rollet*, 6 Iowa, 535; *Rice* v. *State*, 3 Kan. 141; *Shaw* v. *People*, 3 Hun, 272; *Mills* v. *Com.*, 13 Pa. St. 627.)

V. Judgment was not satisfied by appellant Pray. The stipulations, certificate of clerk, and affidavits on file herein, as well as the last page of appellant's brief, show plainly that the money was simply deposited with the clerk of the Second Judicial District Court, in and for the County of Churchill, by appellant Pray, in order that he might have his liberty to secure counsel and to perfect his appeal. The said deposit was given and accepted more in the nature of bail money than as a fine. The above documents show that there was an agreement at the time that the money should be held by the said clerk pending this appeal and returned in case judgment should be reversed. It may be true that receiving the money under such circumstances and agreement was irregular, and even that Mr. Pray should not have been given his liberty, but that surely cannot be held to be the wrongful act or the fault of appellant Pray.

By the Court, NORCROSS, J.:

Appellants were convicted in the Second Judicial District Court, in and for Churchill County, of the crime of receiving stolen goods, and were each fined $1,000, with the proviso that in default of payment they be imprisoned at the rate of one day for each two dollars of said fine. From the judgment, and from an order denying their motion for a new trial, an appeal is taken.

The state has moved to dismiss the appeal of C. A. Pray upon the ground that he paid the fine imposed upon him, and having fully satisfied the judgment against him his right of appeal is lost.   This motion is resisted by counsel for appellant Pray upon the ground that by payment of the fine imposed the defendant does not lose his right of appeal, and further that, when defendant Pray paid his fine, it was under such circumstances that he reserved such right.   We will concede, for the purposes of this opinion, that the facts relative to the payment of this fine are substantially as set forth in a stipulation entered into between counsel for appellant and the District Attorney of Churchill County and filed in the lower court four months after the appeal was taken.

Said stipulation reads as follows: "That the record on appeal shall and may show that whereas, the judgment of said court against each of said defendants was in the alternative, and provided for a fine of $1,000, and, in case said fine was not paid, for imprisonment in the state prison at Carson City, Nevada, and that, whereas, both of the defendants were confined in the Churchill County jail, at Fallon, Nevada, and neither of them could get out to arrange for counsel on their appeal and for bail, C. A. Pray, one of the above-named defendants, paid his fine of $1,000 in gold coin to the clerk of said court, under protest, and only with the understanding and belief that the same might be held by the said clerk pending his appeal in said case, and that the payment of said fine, under such circumstances and understanding, would in no way cut off, or deprive him of, his full right of appeal to the supreme court, and of his right to have said sum of money, so paid to the clerk of said court, refunded or paid back to him in case the supreme court should decide that the Second Judicial District Court of the State of Nevada, in and for Churchill County, had no jurisdiction to try said case, or for any other reason should dismiss the said defendants or order a new trial of said cause.   That said records may also show the following facts, to wit:   That the said defendant, C. A. Pray, not only paid his said fine, under protest, as above set forth, but that the said sum so paid is still held by the clerk of the court pending the outcome and final decision of his said appeal, and that the State of Nevada,

so represented by said district attorney, is entirely willing
for said defendant to have his full rights of appeal in said
cause, and for the said money to be returned to him in case
the appeal should be decided in his favor."

It is not contended that the arrangements entered into
between the clerk and defendant Pray were in pursuance of
any order of the court or were authorized by law. Counsel
for appellant admit that they were irregular. What was
attempted to be accomplished, however, was not a mere irreg-
ularity; it was an attempt to contravene the plain provisions
of the statute, and any such an agreement is void and cannot
be countenanced. (*State* v. *Murphy*, 23 Nev. 403.) If appel-
lant Pray desired to be released from imprisonment pending
his appeal, the only course open to him was to apply to the
court to be released on bail, as did his codefendant Langdon.
Pray never did so apply, and is now enjoying liberty under
the law for the sole reason that he has paid the fine imposed
upon him. The mere willingness of the district attorney to
allow defendant Pray his rights of appeal and the amount of
his fine restored to him in case of reversal cannot confer such
rights. Section 453 of the criminal practice act (Comp.
Laws, 4418) provides: "If the judgment be imprisonment, or
a fine and imprisonment until it be satisfied, the defendant
shall forthwith be committed to the custody of the proper
officer, and by him detained until the judgment be complied
with." Section 479 of the same act (Comp. Laws, 4444) pro-
vides: "No appeal from a judgment of conviction, unless it
be one imposing a fine only, shall stay the execution of the
judgment, but the defendant, if in custody, shall remain in
custody to abide the judgment upon the appeal, unless admit-
ted to bail, as prescribed in section five hundred and two."

The clerk of the district court has no power to make dis-
position of a fine other than as the statute provides. The
court had jurisdiction of the persons of the defendants and
of the crime charged in the indictment, and the fine was
regularly imposed. Neither the court nor counsel could
adopt a course to liberate the defendant other than the
statute prescribed. It is hardly to be concluded that the
action taken by the clerk in this case was without knowledge

that he was acting in violation of the law. The defendant, also, must have known that he was released in contravention of the statute. Although defendant and his counsel have been aware that defendant was not entitled to liberty except upon the payment of his fine or upon giving bail, no attempt has ever been made to account for his liberty, except that he is in the position of having paid his fine and discharged the judgment against him. Under the provisions of sections 666 and 667 of the criminal practice act (Comp. Laws, 4361, 4362) it was the imperative duty of the clerk within thirty days after the receipt of the amount of the fine to pay the same over to the county treasurer. A heavy penalty is imposed for failure so to do. The full amount of all fines imposed and collected must be transmitted by the county treasurer to the state treasurer (Comp. Laws, 1208, 4645), when the same becomes a part of the state school fund, and may only be paid out upon the warrant of the state controller pursuant to law (Comp. Laws, 1987). When a fine is paid in pursuance of a judgment, the statute determines what disposition shall be made of it, and neither the trial court nor this court has power to alter such disposition, and certainly ministerial officials could not. The judgment against appellant Pray must be treated as satisfied.

There is a conflict among authorities as to whether a voluntary satisfaction of a judgment waives the right of appeal. Counsel for the state have cited a number of decisions holding that it does. It is contended by appellant, however, that the weight of authority is the other way, and this view is taken in 2 Cyc. pp. 647–648, where numerous authorities are cited in the notes. We think it unnecessary to determine between these conflicting positions, for under the view we take this case falls within that class of cases referred to in Cyc., *supra:* "Where an order appealed from is of such a nature that its execution has left nothing upon which a judgment of reversal can operate, the appeal will be dismissed, unless such right was specially reserved." Conceding that in this case an attempt was made to reserve such right, we have already shown that such attempted reservation was by acts clearly void.

The Supreme Court of the United States in the case of *Mills* v. *Green*, 159 U. S. 651, 16 Sup. Ct. 132, 40 L. Ed. 293, said: "The duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it. It necessarily follows that when, pending an appeal from the judgment of a lower court and without any fault of the defendant, an event occurs which renders it impossible for this court, if it should decide the case in favor of the plaintiff, to grant him any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal. And such a fact, when not appearing on the record, may be proved by extrinsic evidence." (*Book Co.* v. *Kansas*, 193 U. S. 49, 24 Sup. Ct. 394, 48 L. Ed. 613; *School District* v. *San Diego County*, 97 Cal. 438, 32 Pac. 517; *Negley* v. *Short* [City Ct. N. Y.] 7 N. Y. Supp. 674.)

Upon a reversal of this case, neither this court nor the trial court has power to direct that the fine paid by defendant Pray be restored to him. Had the clerk of the trial court performed his plain duty under the statute, the amount paid for the fine would long since have reached the state treasury. For this or the trial court to give defendant Pray relief from the fine and order it restored to him would be to give countenance to the illegal acts of the clerk and himself for which there is no warrant. The appeal of defendant Pray will be dismissed.

The appeal of the defendant Langdon is properly before us. But one question is presented. Appellants contend that, conceding that an offense was committed, the proofs show conclusively that it was committed at Goldfield in Esmeralda County; that, this being the fact, the district court in Churchill County had no jurisdiction to try defendant for the offense proven. There can be no question but the indictment charges the commission of an offense within the jurisdiction of the court which tried the cause. The indictment charges that defendants "on the eighteenth day of January, nineteen hundred and seven, * * * at the

township of Hot Springs, in the County of Churchill, * * *
for their own gain, then and there did feloniously buy and
receive four sacks of ore, of the value of three thousand
dollars, from a certain person to the jurors unknown, of the
goods and chattels of the Goldfield-Mohawk Mining Company, a corporation, well knowing that the person unknown
to the grand jury had lately before feloniously stolen, taken
and carried away the said four sacks of ore." It is conceded
that the proofs in this case show that the ore in question
was .purchased, paid for, and received. by the defendants at
Goldfield in the County of Esmeralda.　The proofs also show
that after it was so purchased and received it was shipped by
defendants from Goldfield to Hazen, within said Hot Springs
Township, in Churchill County.　It is not disputed by
counsel for the state that the rule of the common law prevails in this state, and that such rule requires that an indictment be found in the county in which the crime has been
committed. (Comp. Laws, 3095; 12 Cyc. 229; 22 Ency. Pl. &
Pr. 821; 1 Bishop, New Crim. Procedure, 47–49.)　The crime
of larceny was an exception to this rule, and by statutory
enactment the rule has been modified with reference to certain other specified crimes.　For example, our statute provides that "when property feloniously taken in one county
by burglary, robbery, larceny, or embezzlement, has been
brought into another, the jurisdiction of the offense shall be
in either county." (Comp. Laws, 4060.)　"In the absence of
a statute, the venue of the crime of receiving stolen goods is
in the county in which they are received, and not in the
county in which they are stolen, nor in a county into which
they are subsequently taken.　In some jurisdictions this
rule is changed by statute." (12 Cyc. 234.)　Appellant was
indicted under section 65 of our crimes and punishments
act, which reads as follows:　"Every person who, for his
gain, or to prevent the owner from again possessing his
property, shall buy or receive stolen goods, or anything
the stealing of which is declared to be larceny, or property
obtained by robbery, burglary, or embezzlement, knowing
the same so to have been obtained, shall, upon conviction,
be imprisoned in the state prison for a term not exceeding

five years, or by a fine not exceeding one thousand dollars, or by both such fine and imprisonment; and every such person may be tried, convicted, and punished, as well before as after the trial of the principal. No person convicted of the offense specified in this section shall be condemned to imprisonment in the state prison, unless the value of the thing bought or received shall amount to fifty dollars, but the same shall be punished as provided in cases of petit larceny." (Comp. Laws, 4719.)

. The only contention made by counsel for the state supporting the conviction of appellant in Churchill County is based upon the provisions of section 85 of the criminal practice act, which reads as follows: "When a public offense is committed in part in one county and in part in another, or the acts or effects thereof constituting or requisite to the consummation of the offense occur in two or more counties, the jurisdiction shall be in either county." (Comp. Laws, 4055.) Counsel in their brief say: "Unless section 4055, *supra*, changes the rule as applied to section 4079, defining the crime of receiving stolen property, we concede that appellant's contention is correct. What, then, are the essential elements of the offense of receiving stolen goods as defined by our statute? In answering this question, we must look to the language defining the crime. Our contention is that there are three material and essential elements constituting this offense, the absence of any one of which elements will defeat a charge of this character under the law: (*a*) A person charged must receive or buy the property; (*b*) he must know that the property was stolen; (*c*) the purpose or intent to prevent the owner from again possessing the property, or for the receiver's own gain, must also exist." Counsel correctly sets forth the essential elements of the crime in question, and it is conceded that the first two occurred at Goldfield, in Esmeralda County. If the third element, the intent, also existed at the time of the receiving, then all elements of the crime were present and the offense was complete in Esmeralda County.

The wrongful intent being a necessary ingredient of the crime charged, such intent must exist at the time of the

buying or receiving of the stolen goods. "To constitute a crime the act must, except in the case of certain statutory crimes, be accompanied by a criminal intent, or by such negligence or indifference to duty or consequences as is regarded by the law as equivalent to a criminal intent, the maxim being, *actus non facit reum, nisi mens sit rea*— a crime is not committed if the mind of the person doing the act be innocent." (12 Cyc. 147; 1 Bishop's New Crim. Law, 204–208; *State* v. *Zichfeld*, ·23 Nev. 304–315, 62 Am. St. Rep. 800.) This rule of itself is, we think, decisive of this case. Counsel, however, argue that "the act of the defendants in carrying the property into Churchill County, and the effect of those acts, constituted the element of the intention to deprive the Goldfield-Mohawk Company of its property, and, such being the case, by the section referred to the jurisdiction of the offense was either in Churchill County or in Esmeralda County." This argument is fallacious, for if there was no wrongful intent until the property was carried into Churchill County, then the act of ·receiving was not accompanied with the wrongful intent necessary to constitute the crime. If the unlawful intent existed, as it must have existed to constitute the offense, at the time the property was received at Goldfield, then the crime was complete in Esmeralda County. The very authority which counsel for the state cite announces the principle of law we have heretofore referred to, and is an authority, we think, against their position. We quote from the case the following: "There must be a concurrence, in point of time, of the act and intent, to constitute an offense. If the evil intent existed in the defendant's mind, in Grant County, to receive the animal charged to have been stolen, there was no act coupled with such intent, and hence there was no completed crime committed in Grant County by the defendant." (*State* v. *Rider*, 46 Kan. 332, 26 Pac. 745.)

There can be no question that the offense of receiving stolen goods is consummated when the goods are received with the unlawful intent specified in the statute. The subsequent transporting of the received stolen goods into another county in order to reap the fruits of the crime is

not an act consummating or necessary to consummate the crime. Such act is simply an evidentiary fact proving or tending to prove the existence of the unlawful intent at the time of the receiving. When the ore was received with the unlawful intent, the crime was complete and the venue fixed. The removing of the ore to Hazen for the purpose of selling it and receiving the money expected to be paid for it may properly be said to be an act in the consummation of the purpose for which the crime was committed, but it is not an act in the consummation of the crime itself, for every element of the crime existed before the removal of the ore into Churchill County. In the position which the state has taken in this case, they have treated the manifestation of the unlawful intent as the intent itself.

Counsel say that, if section 4055 of the Compiled Laws "has no application to the offense charged in the case at bar, then it has no meaning whatever." This conclusion does not follow. Many illustrations of cases where this section of the statute would be applicable may be found in 12 Cyc., at pages 239 and 240. The proofs of crime shown by the record in this case relate to an offense committed in Esmeralda County, and there is no proof that the offense charged in the indictment was committed. Under the law as it now exists in this state, we are obliged to reverse the judgment and the order appealed from by the defendant Langdon.

For the reasons given, it is ordered that the appeal of C. A. Pray be dismissed; that the judgment of conviction against W. J. Langdon and the order denying his motion for a new trial be reversed, and the cause is remanded for a new trial or such other proceedings as may be in consonance with this opinion.