[No. 2322]

## STATE OF NEVADA, APPELLANT, *v.* THOMAS S. PARK, RESPONDENT.

[178 Pac. 389]

1. CONSTITUTIONAL LAW—CLASS LEGISLATION.
    Stats. 1915, c. 135, amending act of March 17, 1911, by adding thereto section 375½, providing that it shall be unlawful for any person to have in his possession any hide from which the ears have been removed, or the brand obliterated, cannot be declared invalid by the supreme court, for the reason that it is unjust and oppressive, in that the owner and thief are placed in the same class.

2. CONSTITUTIONAL LAW—WISDOM AND EXPEDIENCY OF STATUTE— LEGISLATIVE QUESTION.
    The justice, wisdom, and expediency of laws are within the exclusive province of the legislature.

3. CRIMINAL LAW—DEFINING OFFENSES—POWER OF LEGISLATURE.
    Acting within constitutional bounds, the legislature is clothed with unlimited and absolute power to define statutory offenses and prescribe punishment for their violation, and may penalize acts which before were innocent.

4. CRIMINAL LAW—POLICE POWER.
    The legislature may, in the exercise of the police power when public interests demand it, define and declare public offenses the effect of which restricts or regulates the use and enjoyment of private property.

5. CONSTITUTIONAL LAW—POLICE POWER—PERSONAL AND PROPERTY RIGHTS.
    A statute enacted for the prevention of a public offense which the legislature deems essential to declare to promote the public good must be reasonably adapted to attain that end without unnecessarily invading personal or property rights.

6. CONSTITUTIONAL LAW—DUE PROCESS OF LAW.
    Stats. 1915, c. 135, amending act of March 17, 1911, by adding thereto section 375½, providing that it shall be unlawful for any person to have in his possession any hide from which the ears have been removed, or the brand obliterated, deprives a person of his property without due process of law against the guaranties of section 1, article 14, of the federal constitution, and section 8, article 1, of the state constitution.

7. ANIMALS—OBLITERATING BRANDS—OFFENSE.
    Stats. 1915, c. 135, amending act of March 17, 1911, by adding thereto section 375½, providing that it shall be unlawful for any person to have in his possession any hide from which the ears have been removed, or the brand obliterated, is an unnecessary invasion of property rights, and therefore an unreasonable exertion of the police power.

.APPEAL from Fourth Judicial District Court, Elko County; *E. J. L. Taber,* Judge.

Thomas S. Park was charged with having in his possession a hide of a heifer, from which hide the ears had been removed. From an order sustaining demurrer to information, the State appeals. **Affirmed.**

*Geo. B. Thatcher,* Attorney-General; *Edw. T. Patrick,* Deputy Attorney-General, *Wm. McKnight,* Deputy Attorney-General, *E. P. Carville,* District Attorney, and *C. A. Cantwell,* Deputy District Attorney, for Appellant:

The legislature has the power to define what acts shall constitute criminal offenses, what penalty shall be inflicted upon offenders, and generally to enact all laws deemed expedient for the protection of public and private rights and the punishment of public wrongs, the expediency of making any such enactments being a matter of which the legislature is the proper judge. So long as its enactments do not infringe constitutional rights and privileges, express or necessarily implied, its will is absolute. It may, acting within these limits, make acts criminal which before were innocent. This in its nature is a legislative power which, by the constitution of each state, is all but universally committed to the discretion of the legislative body. 8 R. C. L. 57.

Rights of property, like all other social and conventional rights, are subject to regulation under the police power, and such reasonable limitations may be imposed as will prevent injury to others. Commonwealth v. Alger, 7 Cush. 53.

Because the economic conditions of a country, due to the rapid strides toward a more complete and perfect civilization, are constantly changing, it would seem that it has been and is impossible to define "police power" in so many words. 8 Cyc. 863.

*Curler & Castle,* for Respondent:

There are limitations to the police power, and it is necessary to the validity of police regulations that they should not violate any provision of the federal or state constitution; interfere with the exclusive jurisdiction of

Congress; unlawfully discriminate against individuals or classes; be unreasonable; invade private rights of liberty or property unnecessarily, or be unrelated to some one or more of the objects for the preservation of which this power may be exercised, but proper and adapted to that purpose.    Am. & Eng. Ency. Law (2d Ed.) 935; State v. Redmon, 14 L. R. A. 229.

"The constitutional guaranty that no person shall be deprived of his property without due process of law may be violated without the physical taking of property for public or private use;  *  *  *  and hence any law which destroys it or its value, or takes away any of its essential attributes, deprives the owner of his property."    In Re Jacobs, 98 N. Y. 98, 50 Am. Rep. 636. "The right of property is a fundamental right,  *  *  * the protection of which. is one of the most important objects of government.  *  *  *  It refers  *  *  *  to the right to acquire and possess the absolute and unqualified title to every species of property recognized by law. *  *  *  Within it are included the right to acquire, hold, enjoy, manage, and dispose of property, as well as the right to make contracts both in reference thereto and generally."    6. R. C. L. 261.

"That there is a limit to the police power which the courts must, when called upon in a judicial proceeding, ascertain and declare, is as well settled as the existence of the power itself.  *  *  *  If, therefore, a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts so to adjudge and thereby give effect to the constitution."    State v. Williams, 146 N. C. 618.

The statute under discussion does not in some plain, appreciable and appropriate manner tend toward the accomplishment of the object for which the power is exercised.    "But, under the pretense of prescribing a police regulation, the state cannot be permitted to

encroach upon any of the rights of the citizens which the constitution intended to secure against abridgment." In Re Jacobs, supra; Watertown v. Mayo, 109 Mass. 315. The courts have always distinguished the ordinary pursuits and callings in life from those which are inherently wrong and harmful. State v. Williams, 17 L. R. A. 299.

So, a police regulation, correctly speaking, is no more legitimate than a law in any other field if it in fact violates any principle entrenched in the constitution." State v. Redmon, supra; Marymont v. Nevada State Banking Board, 111 Pac. 295; 6 R. C. L. 258, par. 243.

By the Court, DUCKER, J.:

An information was filed against the respondent by the district attorney of Elko County under section 375½ of an act of the legislature of this state, entitled "An act to amend an act entitled 'An act concerning crimes and punishments, and repealing certain acts relating thereto,' approved March 17, 1911, and adding another section thereto, to be numbered 375½," approved March 15, 1915. Stats. 1915, p. 155.

The act, which consists solely of said section 375½, reads:

"It shall be unlawful for any person to have in his possession any hide of any cow, bull, steer, calf or heifer, from which hide the ears have been removed * * * or the brand obliterated, defaced, or disfigured so that same cannot be readily recognized, and any person having such hide in his possession shall be deemed guilty of a felony, and upon conviction thereof shall be punished by imprisonment in the state prison for any term not less than one year nor more than five years."

The information charges that the defendant, on the 3d day of June, A. D. 1917, or thereabouts, and before the filing of this information, at the county of Elko, State of Nevada, did then and there wilfully, unlawfully and feloniously have in his possession a hide of a heifer, from which said hide the ears had been removed, all of

which is contrary to the statute in such cases made and provided and against the peace and dignity of the State of Nevada.

A demurrer was interposed to the information upon the grounds:

First, that the facts stated in said information do not constitute a public offense; and

Second, that the facts stated in said information do not constitute a public offense in this, that the act of the legislature, entitled "An act to amend an act entitled 'An act concerning crimes and punishments, and repealing certain acts relating thereto,' approved March 17, 1911, and adding another section thereto, to be numbered 375½," is unconstitutional and void.

The district court sustained this demurrer and made an order allowing the respondent to go without bail and releasing the sureties on his bail bond from further liability.

From this order sustaining the demurrer, the state appeals. The constitutionality of the act of the legislature under which the information is drawn is thus before this court for determination.

Respondent insists that this act comes in conflict with section 1 of the fourteenth amendment to the constitution of the United States, which provides that—

"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

He asserts that the statute goes beyond the legitimate bounds of the police power of the state. He contends that the law is invalid in this respect, because it unnecessarily restricts the use of property in hides of live stock in this state to such an extent as to destroy its value for any practical use, and therefore deprives him of his property without due process of law.

There is no ground for dissent from the conclusion

that in this enactment the evil sought to be reached is
the larceny of cattle. Its purpose is obvious from the
wording of the statute and the conditions prevailing in
this state. The business of raising cattle is one of the
principal industries of the state, and has to do with
property of a kind commonly subject to the crime of
larceny. Its value, the ease with which it can be moved
from one locality to another, and its identity, destroyed
by killing and skinning the animal, or by changing, muti-
lating, or removing the marks and brands, furnish the
inducement for thieves. Particularly is the larceny of
cattle a common crime in Nevada, where, as in other
grazing states, large numbers of stock wander over the
wide expanses of range lands, unkept by herdsmen, and
often unseen by the owner or his agents for long periods
of time during the grazing season of the year.

These range conditions create favorable opportunities
for the theft of cattle, as detection is difficult and often
impossible, and the loss to stockmen is increased by the
resultant acts of larceny.

When a stolen animal is killed it loses all marks of
identity as soon as the hide bearing the earmarks and
brand is removed. The legislature, recognizing these
conditions and the difficulty that generally follows in
proving identity and ownership, passed the enactment
under consideration for the purpose of supplementing
the law of larceny of cattle.

That the statute is extremely drastic in its provisions
cannot be denied. Acts theretofore generally innocent
and properly and usefully exercised over property in
hides of cattle have been declared to be a felony, and
punishment prescribed. The mere possession of the
hide of any cow, etc., with the ears or brand removed or
changed as described in the statute, property inherently
harmless and a valuable product of the cattle-raising
business, is made a felony. There are no exceptions
made or guilty intent required. The owner and the
thief are placed in the same class by possession of the
proscribed hide.

1. While we may consider the statute unjust and oppressive in these respects, we may not, for such reasons, declare it invalid.

2-4. The justice, wisdom, and expediency of laws are within the exclusive province of the legislature of the people acting in a representative capacity. Acting within constitutional bounds the legislature is clothed with unlimited and absolute power to define statutory offenses and prescribe punishment for their violation, and in the exercise thereof may penalize acts which before were innocent. In the exercise of the police power it may likewise, when the public interests demand it, define and declare public offenses, the effect of which restricts or regulates the use and enjoyment of private property.

This power properly exercised does not violate any of the personal or property rights guaranteed by the federal and state constitutions upon the recognized principle that an implied obligation rests upon every property holder to use it without injury to the rights of the community or to the equal property rights of others. Mugler v. Kansas, 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205; Commonwealth v. Alger, 7 Cush. (Mass.) 53.

5. But a statute enacted for the prevention of a public offense which the legislature deems essential to declare to promote the public good must be reasonably adapted to attain that end without unnecessarily invading personal or property rights, before it can be held a valid exercise of the police power. The statement of a rule which has been sanctioned by the weight of authority, and which appeals to us as a clear and logical expression of the elements to be weighed in reaching a correct conclusion as to the limits of the police power, is stated in 22 Am. & Eng. Ency. Law (2d Ed.) p. 938:

"In order that a statute or ordinance may be sustained as an exercise of the police power, the courts must be able to see that the enactment has for its object the prevention of some offense or manifest evil, or the prevention of the public health, safety, morals, or general

welfare, and that there is some clear, real, and substantial connection between the assumed purpose of the enactment and the actual provisions thereof, and that the latter do in some plain, appreciable, and appropriate manner tend towards the accomplishment of the object for which the power is exercised."

The purpose of the enactment may be conceded to be the prevention of the larceny of cattle, and there is a plain substantial relation between its provisions and the object sought to be attained. But the effectiveness of the act—that is, the extent to which its provisions are designed to accomplish its purpose—when closely scanned is doubtful. And while the court may not substitute its judgment for the very extensive discretion of the law-making body in this regard, except in cases where it is plainly apparent that an act is noneffective, we may weigh this doubtful element in connection with the interdiction which, we believe, the act lays upon the use and enjoyment of private property.

Counsel insists that the provisions of the act will put an end to the killing of cattle in this state and the subsequent mutilation of hides to prevent identification by forcing thieves either to preserve the evidence of their larceny or force them to do entirely away with the hides thus furnishing evidence of their guilt. But it seems quite as reasonable to conclude that the act, instead of causing larcenies of this character to be abandoned or diminished to any great extent, would persuade the thief to choose the lesser of the three incriminating circumstances stated, and destroy the hide.

A thief as a rule does not intentionally retain evidence of the crime in his possession, unless it be the property for which the crime is committed or means for its commission. Especially is he less liable to do so when such possession is in itself a felony as this act provides.

Cattle are stolen for the value of the carcass, and not for the hides, which sometimes contain marks of identification other than the artificial ones of earmarks and

brands. Consequently the more effectively the latter are destroyed the less is the risk of detection. The possession of a slaughtered animal without the hide may or may not be some evidence of guilt, depending entirely on other circumstances, but, even so, this is an element of risk always present in larcenies of this kind when such method of destroying evidence is pursued, and is not likely to be avoided because other methods are made felonious.

6. Does this statute deprive a person of his property without due process of law against the guaranties of section 1, article 14, of the federal constitution, and section 8, article 1, of the constitution of this state? We are of the opinion that it does. True, the statute under consideration does not work an active appropriation of hides from the owner, but it limits their use to an extent that destroys their value.

The inception of private property was in its use, and its value may be said to end there.

We acquire property for its use and enjoyment, and if these are denied us it is barren of an essential attribute. Property can be as effectually destroyed by legislation limiting or prohibiting its use as by annihilating the substance or structure of the thing itself. 6 Ruling Case Law, pp. 196, 197, and cases there cited.

Hides of cattle constitute property and are a valuable product of the cattle-raising business, which is one of the principal industries in this state. Rawhide is used in a variety of ways by stockmen and others in making bridle-reins and lariats, and in making and repairing various kinds of ranch equipment. Aside from the uses mentioned and which are sometimes crude, it is true, but by no means obsolete in this state, it is used for covering saddle trees, and, when converted into leather, for fully equipping the saddle. When converted into leather by the art of tanning its uses are many and diversified, and the manufacture of leather is a very important industry of the country.

It is clear from the restrictions laid upon hides of the animals mentioned in the statute that they cannot be utilized for any of these purposes in this state without violating its provisions and subjecting the possessor to the penalty of a felony. And it is difficult to perceive how they can be used to obtain any benefit from the product, except by shipping it out of the state, for to devote the hide to any other use whatever would necessarily involve the removal of the ears and mutilation of the brand.

7. This appears to us to be an unnecessary invasion of property rights, and therefore an unreasonable exertion of the police power. It is not a regulation of the use of property but a restriction that virtually amounts to a prohibition of its use without effecting proportionate ends conducive to the public welfare. Admittedly the number of hides mutilated for the purpose of evading detection for the crime of larceny are comparatively small to the great volume of hides legitimately taken from cattle and from which the ears and brands are removed or the latter obliterated that the hide may be converted into articles of trade and used in various other ways. The instances where hides are mutilated are occasional and secret, while the necessity for doing so to devote them to useful purposes in fashioning and manufacturing articles of merchandise is general and universal. But because hides may be disfigured occasionally, to destroy evidence of larceny of cattle, the statute entirely prohibits the use of hides in this state. To prevent a few from illegal practices the many are deprived of the use of property.

The case at bar must be distinguished from those in which the property proscribed is harmful in its nature or tendency, such as intoxicating liquors, opium, and the like, the use of which on account of their recognized noxious qualities may be entirely prohibited. The preservation of the public health and public morals is vitally essential to the health and vigor of the body politic, and

by the law of self-preservation embodied in the police power it may destroy anything which tends to undermine them. .

Counsel for appellant cite the case of State v. Brooken, 19 N. M. 404, 143 Pac. 479, L. R. A. 1915B, 213, Ann. Cas. 1916D, 136. In this case the court held constitutional a statute which makes it a misdemeanor to hold under herd or otherwise interfere with the freedom of calves of neat cattle which are less than seven months old, except such young animals be accompanied by their mothers. The court held that the statute did not violate the state constitution securing to all persons the rights of acquiring, possessing, and protecting property. The court said:

"The act neither denies the right to acquire, possess, nor protect property. It simply provides regulations which, under the peculiar conditions prevailing in this state, must be held reasonable for the exercise and enjoyment of the constitutional guaranties in this regard."

By the New Mexico statute the owner of calves is not deprived of his property, nor is its use or salability affected in an appreciable way. He is simply required not to hold calves from their mothers until after they have reached a certain age. This is a reasonable regulation under the conditions existing in that state conducive to the larceny of young calves.

The case is easily distinguished from the case before us, wherein the statute considered prevents hides of cattle from being handled in this state at any time in a manner clearly necessary to derive any benefit from them, except such as may be obtained by sending them out of the state.

If the New Mexico statute required hides taken from cattle to be kept intact in some conspicuous place for a certain time, as was provided by a former statute of Nevada repealed by the legislature of 1913, the case of State v. Brooken would be more in point, but it has no application in this case.

We conclude that the act of the legislature of this state, entitled "An act to amend an act entitled 'An act concerning crimes and punishments, and repealing certain acts relating thereto,' approved March 17, 1911, and adding another section thereto, to be numbered $375\frac{1}{2}$," approved March 15, 1915, is unconstitutional and void.

The order of the district court sustaining the demurrer to the information is affirmed.

