# THE STATE OF NEVADA, Respondent, *v*. PETER PANSEY, Appellant.

## No. 3349

January 30, 1942. 121 P. (2d) 441.

*Harold M. Morse* and *Madison B. Graves,* both of Las Vegas, for Appellant.

*Gray Mashburn,* Attorney-General, *W. T. Mathews* and *Alan Bible,* Deputy Attorneys-General, and *Roland H. Wiley,* District Attorney, and *V. Gray Gubler*, Deputy District Attorney, both of Las Vegas, for Respondent.

## OPINION

By the Court, DUCKER, C. J.:

This is a motion for an order striking from the record on appeal volume two thereof and parts of volume one thereof. The motion is made on the ground that said matters are not embraced in a bill of exceptions settled and certified as required by law. The parts of volume one excepted from the motion to strike, constitute the record proper, or judgment roll, while the papers sought to be stricken therefrom form no part of the record unless properly contained in a duly settled and certified bill of exceptions. To volume two is attached the following certificate:

"I, Margaret Hinson, do hereby certify that I am now one of the duly appointed, qualified and acting court reporters of the Eighth Judicial District Court of the State of Nevada, in and for the County of Clark, and was such at all times herein mentioned, and that on the 26th day of May, 1941, I was duly sworn by Hon. George E. Marshall, Judge of the above-entitled court, to report all testimony and proceedings in the above-entitled action, and I further certify that the foregoing 201 pages comprise a full, true and correct transcript of my shorthand notes taken upon the trial of said action, of all the

testimony offered and received, objections and exceptions of counsel as to the reception of evidence, statements and rulings of the court thereon, and all matters to which the same relate.

"Dated this 9th day of August, 1941.

"Margaret Hinson, Court Reporter."

The state contends that it does not constitute a bill of exceptions because it is not settled and signed by the judge of the court as required by section 11081 N. C. L. But it was settled and signed by the judge on September 4, 1941, as appears from his certificate annexed thereto, and was filed in the action September 8, 1941, with volume one, to which is annexed a similar certificate of the judge.

It is also contended that it should be stricken because it is not attached to the record in conformity with paragraph 9 of sec. 11061. While this is a duty imposed on the clerk, an appellant ought not to be penalized because the clerk fails to so attach it. There can be no objection to a transcript of the proceeding, containing all of the evidence, being settled as a bill of exceptions. This is entirely within the discretion of the trial judge in any given case.

Does the fact that the judge also settled and signed volume one, which contains a number of papers in addition to the judgment roll, as a bill of exceptions also save such papers from the motion to strike? The judgment roll and bill of exceptions should not be jumbled together in such a manner. It is a bad practice. As said in State of Nevada v. Huff, 11 Nev. 17: "A bill of exceptions is a record, and a very important record. The only mode by which it can be authenticated is the signature of the judge; and when so authenticated, it receives a very high degree of credit. It ought not therefore to be composed of loose and scattered papers, but should be complete in itself, with a formal beginning and ending, so that it may be known where it begins and where it ends. * * *"

■ However, we must content ourselves with calling attention to the objectionable character of such a practice. The judge's signature and certificate of settlement give such papers the force and effect of a bill of exceptions, and we are not authorized to strike anything from it. Ryan v. Landis, 58 Nev. 253, 74 P.(2d) 1179, 75 P. (2d) 734.

■ In respondent's answering brief on this motion is contained an affidavit of the district attorney of Clark County in which it is averred that the purported copy of the transcript on appeal served on respondent contained no copy of the order of settlement of the district judge, and that respondent had no knowledge of the fact, if such is a fact, that said order was incorporated in the original transcript on appeal, until the service upon it of appellant's answering brief. In this regard it is contended that rule XIII, par. 3, requires that a copy of the transcript be served upon the opposite party, and that the bill of exceptions should be stricken because failure to serve a substantially correct copy is equivalent to want of service. Even if this is so, it is no cause to strike the bill of exceptions, the motion for which is put on the ground that such bill was not settled and certified as required by law. The motion to strike should be denied in its entirety.

It is so ordered.

ON THE MERITS

August 3, 1942. 128 P.(2d) 464.

*Harold M. Morse* and *Madison B. Graves,* both of Las Vegas, for Appellant.

*Gray Mashburn,* Attorney-General, *W. T. Mathews,* and *Alan Bible,* Deputy Attorneys-General, and *Roland H. Wiley,* District Attorney, of Las Vegas, for Respondent.

## OPINION

By the Court, TABER, J.:

This is an appeal from a verdict of conviction, judgment, order denying a motion for a new trial, and order denying a motion in arrest of judgment, in the eighth judicial district court, Clark County. Appellant was prosecuted under the provisions of sec. 10335 N. C. L. 1929, being sec. 383 of the crimes and punishments act which became ·effective January 1, 1912. Said section is as follows: "Every person who, for his own gain, or to prevent the owner from again possessing his property, shall buy or receive stolen goods, or anything the stealing of which is declared to be ·larceny, or property

obtained by robbery, burglary, or embezzlement, knowing the same so to have been obtained, shall upon conviction, be imprisoned in the state prison for a term not exceeding five years, or by a fine not exceeding one thousand dollars, or both; and every such person may be tried, convicted, and punished, as well before as after the trial of the principal. No person convicted of the offense specified in this section shall be condemned to imprisonment in the state prison, unless the value of the thing bought or received shall amount to fifty dollars, but the same shall be punished as provided in cases of petit larceny."

In 1929 the legislature enacted "An act relative to receivers of stolen goods, and matters pertaining thereto." Sections 10543–10545 N. C. L. 1929. Section 1 of this act was amended in 1931, Stats. of Nevada, 1931, chap. 117, p. 196, and, as so amended, reads: "Section 1. Any person who shall receive or buy any goods or chattels or choses in action, or other valuable thing whatsoever, that shall have been stolen from any other person or taken from him by robbery, otherwise unlawfully or fraudulently obtained, or converted in any manner contrary to any of the provisions of the act to which this act is supplemental, whether such stealing or robbery shall have been committed either in the State of Nevada or in some other jurisdiction, and whether such goods, chattels, choses in action, or other valuable thing shall be received or bought from the thief, robber, or person so obtaining, taking, or converting them, or from any other person, or shall receive, harbor or conceal any thief or robber knowing him to be so, shall be guilty of a gross misdemeanor; and if such person is shown to have or to have had possession of such goods, chattels, choses in action, or other valuable thing within six months from the date of such stealing, robbery or unlawful or fraudulent obtaining such possession shall be deemed sufficient evidence to authorize conviction, unless such person shows to the satisfaction of the jury either

(1) that the goods or chattels or choses in action or other valuable thing were, considering the relations of the parties thereto and in circumstances thereof, a gift; or (2) that the amount paid for the goods, chattels, choses in action, or other valuable thing represented their fair and reasonable value; or (3) that the person buying such goods, chattels, choses in action, or other valuable thing knew of his own knowledge or made inquiries sufficient to satisfy a reasonable man that the seller was in a regular and established business for dealing in goods, chattels, choses in action, or other valuable thing of the description of the goods purchased; or (4) that the person receiving or buying such goods, chattels, choses in action, or other valuable thing, has simultaneously with the receipt or sale reported the transaction to the police authorities of the municipality in which he resides."

The only two changes made in section 1 by the 1931 amendment were, first, the amendment of the expression "high misdemeanor" so as to read "gross misdemeanor," and second, the omission of the comma after the words "fraudulent obtaining."

Section 2 of the act of 1929 and section 2 of the amendatory act of 1931 are identical, and read as follows: "All acts and parts of acts in conflict with the provisions of this act are hereby repealed."

Appellant contends that said sec. 10335 was repealed in its entirety by the later act, and that he was therefore informed against, tried, and convicted under a statute which has not been in effect for more than ten years. In support of this position he argues that the later statute revises the entire subject matter of said section, and is inconsistent therewith and flatly repugnant thereto. He points out that violation of sec. 10335 is a felony, whereas violation of the later statute is a gross misdemeanor. He claims that the character of proof required both by the prosecution and defense is entirely different in the two statutes. He asserts that

under no fair or reasonable construction can the two statutes be harmonized or reconciled.

 This court is of the opinion that sec. 10335 was not repealed by the amended act of 1929. Had it been the intention of the legislature that said section was to be entirely superseded, it would have been a simple matter to amend it, or to specify it in the repealing clause of the supplemental act. If the court were to adopt appellant's view, this state would no longer have a statute making it a felony for a person, for his own gain or to prevent the owner from again possessing the stolen property, to receive stolen goods of the value of $50 or more, though knowing at the time of such receiving that the goods had been stolen. One result of this would be that a person could not be sentenced to the state prison for receiving stolen goods of the value, say of fifty thousand dollars, notwithstanding such person had the criminal intent and knowledge mentioned in sec. 10335. True, the legislature has the exclusive power, subject to constitutional limitations, to define the offense of receiving stolen goods, and to make it a gross misdemeanor only, regardless of the value of the property. And that body may also make the doing of certain acts criminal, without regard to the intent of the doer. State v. Zichfeld, 23 Nev. 304, 46 P. 802, 34 L. R. A. 784, 62 Am. St. Rep. 800; State v. Clark, 32 Nev. 145, 104 P. 593, Ann Cas. 1912c, 754; 22 C. J. S. Criminal Law, sec. 30; Wharton's Criminal Law (12th Ed.), sec. 143. But criminal intent is one of the essential elements of the crime of receiving or buying stolen goods. State v. Pray, 30 Nev. 206, 94 P. 218; Wharton's Criminal Law (12th ed.), sec. 1231; 53 C. J., "Receiving Stolen Goods," sec. 2, p. 503. There are various circumstances under which the receiving or buying of such goods may be wholly innocent and free of any criminal intent or guilty knowledge.

If we were to hold that sec. 10335 has been entirely superseded by the act of 1929 and that the latter act is

complete in itself and revises the entire subject matter of the earlier statute, then the only statute Nevada would have relating to the kind of crime under discussion would be the amended act of 1929, making the mere act of receiving or buying stolen goods a gross misdemeanor, regardless of criminal intent, guilty knowledge, or criminal negligence. Amended sec. 10543 N. C. L. 1929, considered by itself and without reference to sec. 10335, does not require that the person receiving or buying the stolen goods must do so for his own gain, or to prevent the owner from again possessing his property, nor that he must know at the time of such buying or receiving that the property had been stolen or otherwise unlawfully or fraudulently obtained or converted.

■ There is serious doubt whether the amended act of 1929, if it can be given effect under any circumstances, can be given such effect otherwise than by construing it with sec. 10335. It does not seem unreasonable to believe that the legislature, in view of conflicting opinions as to the meaning of the word "knowing" as used in such statutes as sec. 10335, and realizing that many guilty persons have escaped conviction by raising a reasonable doubt in the minds of juries as to whether, at the time of the receiving or buying, they knew that the goods had been stolen, intended to prevent the escape of many such persons by providing in said amended act of 1929 that a person shown to have or to have had possession of stolen goods within six months from the date of the stealing, though not knowing that the property had been stolen, may be found guilty of a gross misdemeanor unless he can show to the satisfaction of the jury one of the four things specified in the last part of section 1 of that act. Such a legislative intent might well account for the fact that violation of the provisions of section 1 of said act is made a gross misdemeanor. The thought here would be that where knowledge that the goods had been stolen is alleged and proved, the crime would be a felony if the value of the

property is $50 or more; but where such knowledge is not alleged or relied upon, the crime would be only a gross misdemeanor. Regarded in this light, there would be no inconsistency or repugnance between the amended act of 1929 and sec. 10335. The provision of amended sec. 10543, relating to possession of the stolen goods within six months from the date of the stealing, and extending to the end of that section, is in no way inconsistent with sec. 10335. The same is true of other provisions in the first part of said section which have not been discussed herein.

■ In arriving at the conclusion that the later statute does not repeal sec. 10335, the court has been influenced to some extent by the fact that the act of 1929, before as well as after its amendment in 1931, expressly recites that it is a supplemental act. This indicates that it was intended not as a repeal of but an addition to sec. 10335. Words and Phrases, Perm. Ed., vol. 40, pp. 774, 775.

The court is not to be understood as deciding what construction should be put upon the amended act of 1929, or whether it is invalid by reason of the ambiguity or uncertainty of some of its provisions, or the omission of essential elements. The foregoing discussion has been for the sole purpose of setting forth some of the reasons why, in our opinion, the act does not repeal section 10335. We have not been cited to, nor have we found, any statute similar to amended section 10543, and so are not advised whether another such statute exists, and if so, whether the courts of any other jurisdiction have construed it. It would seem that the act is in great need of legislative clarification.

■ Appellant claims that he has never had a preliminary hearing on any charge within the provisions of amended section 10543, under which he was sentenced. He was not entitled, however, to a preliminary examination on any charge within the provisions of amended section 10543. That he was erroneously sentenced pursuant to that section does not change the fact that he was prosecuted and convicted under section 10335; he

was given .a preliminary hearing on the charge made against him under the latter section.

■ Appellant argues further that he was entitled to another preliminary hearing because the information on which he was tried did not follow the complaint in the justice's court. We think it did; but even if it did not, that alone would not have entitled him to another preliminary examination, because under the provisions of section 10785 N. C. L. 1929, accused may be held to answer for a public offense other than that charged in the complaint.

Appellant contends also that he was not accorded a preliminary hearing on the charge for which he was finally tried. This contention is based upon variations in the description of the stolen property. In the complaint filed with the committing magistrate the goods were described as 54 cases of liquor of the approximate wholesale value of $1,000, no brand or brands being specified. In the first information filed in the district court the property was described as certain cases of liquor, of a value in excess of $50. In the first amended information filed in said court there were two counts, the first involving 48 cases of whiskey of the wholesale value of about $900, the second, 4 cases of whiskey of the wholesale value of more than $50. Each count described the whiskey in detail, giving the different brands and the number of cases of each. Defendant's (appellant's) special demurrer to this information was sustained, whereupon a second amended information was filed consisting of but one count and wherein the property involved was described as 52 cases of whiskey of the wholesale value of about $1,000. The different brands and number of cases of each are given in detail. Defendant moved to quash this information, one of the grounds being that he had not been given a preliminary examination on the charges therein contained. The district attorney thereupon, with leave of court, amended the second amended information by interlineation,

changing the number of cases of whiskey from 52 to 54, changing "8 cases Old Granddad, ⅘ gallons" to "8 cases Old Granddad, ⅕ gallons," and inserting "2 cases Windsor quarts." Defendant objected to the amendment by interlineation, and excepted when his objection was overruled. His motion to quash was denied. At all stages of the proceedings after the filing of the first information, defendant repeatedly made demands for another preliminary examination, his demands being refused in each instance.

The charge in the information on which appellant was tried is substantially the same as that in the original complaint and in the earlier informations. It has not been shown that there was any substantial variation in the identity of the stolen goods as shown by the testimony at the preliminary examination and that given upon the trial. It is clear that appellant could not have been misled by any of the slight variances in the description of the goods which he was charged with unlawfully receiving. If the information upon which appellant was tried had stated a separate and distinct offense from that for which he was held to answer, or from that with which he was charged in the earlier informations, he would have been entitled to another preliminary examination. State v. Ruemmele, 64 N. D. 248, 251 N. W. 879. But such is not the case here, nor is there anything in the record to show that appellant was not at all times well advised with regard to the identity of the property he was accused of unlawfully receiving. The slight variations in description were clearly not such as to affect his substantive rights.

The amendment, by interlineation, of the second amended complaint could not have prejudiced appellant. The description of the goods alleged to have been unlawfully received consists of more than a dozen items, and the value of the property listed in the second amended information before the interlineation was greatly in excess of $50. In Nevada, informations are

not required to be verified. The amendments here were made in open court, by leave of court, and entered in the minutes. They were clearly within the discretion of the court to allow, and we certainly will not reverse the conviction simply because such slight changes were made by interlineation, where there is no showing of prejudice. State v. Kelly, 176 La. 405, 146 So. 6; Sandlin v. State, 3 Okl. Cr. 578, 107 P. 946.

Instruction No. 16, requested by the state and setting forth the essential elements of the crime with which appellant was charged, was read to the jury along with the other instructions given them; but on the written instruction which, with the other given instructions, was handed to the jury when they retired for deliberation, the trial judge inadvertently wrote his name after the word "refused" instead of after the word "given." Our statutes provide, among other things, that in charging the jury, the court shall "state" to them all such matters of law as it shall think necessary for their information in giving their verdict, section 10996 N. C. L. 1929; that upon each charge presented by either party and given, or refused, the court shall indorse its decision, and shall sign it, section 10998 id.; that upon retiring for deliberation, the jury "may" take with them, among other things, the written instructions given, section 11004 id.; and that every written charge, given or refused, with the indorsements showing the action of the court, shall form part of the record, and any error in the decision of the court thereon may be taken advantage of on appeal, section 11028 id.

In Musser v. Los Angeles & S. L. R. Co., 53 Nev. 304, 299 P. 1020, 1025, an instruction requested by defendant (appellant), and which correctly stated the law, was read to the jury with the other given instructions, but the trial judge indorsed it "Not given." The instruction related to assumption of risk, and no other instruction was given relative thereto. It was held that the trial court's mistake was prejudicial error, but not because of the mistake alone. As this court said in that case, "The

real question is whether or not the defendant was injured by the instruction being marked 'Not given.'" The case of Terre Haute & I. R. R. Co. v. Hybarger, 67 Ill. App. 480, was cited, wherein a correct instruction upon an important branch of the case—duty to exercise care in approaching a crossing—was read to the jury but marked refused by "probably inadvertent" mistake of the court. This was held reversible error, the court stating that "It is impossible to say that the case of the defendant was not prejudiced by this action of the court."

In the later Illinois case, People v. Duzan, 272 Ill. 478, 112 N. E. 315, in which the defendant was convicted of embezzlement, a correct instruction requested by plaintiff in error on the question of his good character was read to the jury, but mistakenly marked "refused" and handed in that condition to the jury. The supreme court of that state held, "from a consideration of the whole case," that this mistake did not constitute prejudicial error.

This court, in the Musser case, found some four other errors besides the erroneous marking of the instruction. In the last paragraph of the opinion the court said, "While it may be true that some of the errors pointed out were without prejudice, in view of the entire record we feel that the defendant was prejudiced * * *." (Italics are by the court in the present case.)

Section 11266 N. C. L. 1929, being section 619 of our criminal procedure act, reads: "No judgment shall be set aside, or new trial granted, in any case on the ground of misdirection of the jury or the improper admission or rejection of evidence, or for error as to any matter or pleading or procedure, unless in the opinion of the court to which application is made, after an examination of the entire case, it shall appear that the error complained of has resulted in a miscarriage of justice, or has actually prejudiced the defendant, in respect to a substantial right."

It is the opinion of this court, after examining

the whole record, otherwise free of error, that this single mistake of the trial court in indorsing instruction No. 16 "refused" and handing it in that condition to the jury with the other given instructions, did not constitute reversible error. The instruction was actually read to the jury as required by section 10996 N. C. L. 1929. The subject matter of the instruction was given in another instruction, No. 13, by the court of its own motion. The information, setting forth all the essential elements of the crime with which defendant was charged, was read to the jury by the clerk at the beginning of the trial. In instruction No. 14, given by the court of its own motion, the charging part of the information, in its entirety, was again given to the jury. Thus the jury was fully and clearly advised a number of times regarding the essential elements of the offense before the instructions were handed to the jury, and it is to be presumed that counsel also discussed these matters fully in their arguments. The trial judge's mistake in indorsing the instruction "refused" was wholly inadvertent. The evidence was amply sufficient to sustain the verdict; in his motion for a new trial defendant did not give, as one of the grounds, that the verdict was contrary to the evidence. In view of the foregoing, the court is of the opinion that the judge's mistake complained of did not result in a miscarriage of justice, nor did it prejudice the defendant in respect to any substantial right.

The trial court's refusal to give defendant's requested instruction relating to intent and guilty knowledge was not error, as the rule enunciated therein was fully and correctly stated in instruction No. 16. 23 C. J. S., Criminal Law, section 1304, p. 889. The requested instruction contained this sentence: "The receiver must know that the goods were stolen, and this knowledge must exist at the very instant of the receiving; otherwise the crime does not exist." In said instruction No. 16 the court instructed the jury that before they could convict the defendant they must find from the evidence beyond a reasonable doubt, "third,

that the defendant when he received such property, if you find that he did receive it, knew that it was stolen property." Conceding that the language used in the requested instruction is good law, the rule was stated at least equally as well in the given instruction No. 16.

Another instruction requested by defendant but refused by the court reads, in part, that to justify a conviction it must be shown beyond a reasonable doubt that at the time of receiving the stolen property accused must have known that it had been stolen "from the owner" and that the goods were received by accused with the fraudulent intent of depriving the owner of the "immediate" possession thereof, or for his own gain. Under said section 10335 it is our understanding that if the accused, at the time of receiving or buying the goods, knows that they had been stolen, it is not necessary to show further that he knows they were stolen from the owner. With reference to the criminal intent, the jury was told in two other instructions, one given by the court of its own motion and the other at the request of the state, that to justify a conviction the jury must find beyond a reasonable doubt that accused's intention was to receive the property for his own gain, or to prevent the owner from again possessing it. This followed the language of the statute, and it was not error to refuse the requested instruction using the expression "immediate possession."

Other assignments of error have received careful consideration, but are not of sufficient merit to call for any discussion.

It was error for the trial court to sentence appellant under the provisions of amended section 10543. He should have been sentenced under section 10335. The statute gives this court the power to modify the erroneous judgment; we think it better, however, that in this case the correction be made by the trial court.

The verdict of the jury, the order denying the motion for a new trial, and the order denying the motion in arrest of judgment, are affirmed; but the cause is

remanded to the district court, and that court is directed to pronounce judgment in accordance with the provisions of section 10335 N. C. L. 1929.

November 4, 1942. 130 P. (2d) 264.

*Harold M. Morse* and *Madison B. Graves,* both of Las Vegas, for Appellant.

*Gray Mashburn,* Attorney-General, *W. T. Mathews* and *Alan Bible,* Deputy Attorneys-General, and *Roland H. Wiley,* District Attorney, of Las Vegas, for Respondent.

## OPINION

By the Court, TABER, J.:

In our original opinion we said that criminal intent is one of the essential elements of the crime of receiving or buying stolen goods. Petitioner contends that the legislature may lawfully provide that certain acts will constitute the criminal offense of receiving or buying stolen goods regardless of any criminal intent. He cites State v. Serritella, 89 N. J. L. 127, 97 A. 770. The statute involved in that case provided that any person who shall buy or purchase, among other things, metal pipe or junk of metallic nature, from any minor under

the age of sixteen years, which may have been stolen, shall be guilty of a misdemeanor. The supreme court of New Jersey held in that case that the state was not bound to prove that the defendant knew the goods were stolen. There is no such or any similar or comparable provision in amended section 10543 N. C. L. 1929.

■■ The rule that courts cannot encroach on the exercise by the legislature of its power to define and punish crime is subject to constitutional limitations. State v. Park, 42 Nev. 386, 178 P. 389; 16 C. J. S., Constitutional Law, sections 151, subsection f, 580. Counsel has cited no authority, and we are satisfied that none can be found, holding that the legislature can lawfully make it a crime to receive or buy stolen goods without regard to guilty knowledge, criminal intent, criminal negligence, unless the statute includes special circumstances of such a nature as to make it unnecessary, under the law, to allege or prove such knowledge, intent, or negligence. The provision in the New Jersey statute above referred to relating to the buying of certain kinds of stolen goods from minors under the age of sixteen years is one example of such special circumstances.

Other points made in the petition for rehearing do not, in our opinion, require any discussion.

The petition is denied.