McDermott vs. Brewing Company.

No. 13,599.

CHRISTOPHER MCDERMOTT VS. AMERICAN BREWING COMPANY.

SYLLABUS.

Plaintiff seeks to hold defendant liable in damages for a violent assault and battery suffered by him at the hands of its (defendant's) employe, who was a driver of defendant's wagon and who sold and distributed the product of its factory to its customers. Plaintiff's employer was one of defendant's cash customers, to whom the driver was to deliver beer for cash. The driver delivered beer to him and did not require the cash. The day after the sale, he called for the price and, as it was not paid, he sought to take matters in his own hands and resorted to violence. The agreement between the driver of the wagon and the defendant was that cash would be required and brought back to the factory for the beer in his charge for sale and if he failed to return either the cash or the beer, he would be made to pay his employer by deducting the price from his salary.

By the effect of the agreement under which the driver was employed, in collecting the cash at a different time and in a different manner than he was instructed to do, the employer was not made liable for the violent assault. If a servant goes outside of his employment, acting with malice and causing damage, the master is not liable.

A PPEAL form the Civil District Court, Parish of Orleans—
King, J.

D. M. & Allan Sholars for Plaintiff, Appellant.

Gustave Lemle for Defendant, Appellee.

The opinion of the court was delivered by

BREAUX, J. Plaintiff sues for damages arising from an assault made by one of defendant's employes, Moroy. He claims damages in the sum of ten thousand dollars. He avers, in substance, that this employee was defendant's driver and collector; that on a Monday he called at the store where plaintiff is employed as a clerk and salesman to collect the price of four kegs of beer which the defendant brewing company had sold to his employer the Saturday previous; that this employe was with another employe of the defendant company when he called to collect, as just stated, and that he, plaintiff, said to this

employe of the defendant, that his (plaintiff's employer, Cheevers, was not in and that he had no authority to pay the bill. Whereupon, this employe of the defendant grossly insulted plaintiff, charging him with falsehood; said that his employer, Cheevers, was not away, and began to search in the house for him; that, not finding him, he declared that if the bill was not paid immediately, he would take the remaining keg of beer back into defendant's (the brewing company's) possession, and that Moroy became greatly angered when plaintiff placed himself in front of the beer cooler and objected to his removing the keg; that Moroy seized him by the throat and violently threw him on the floor. That owing to the plaintiff's inferiority in size and to his ill-health, Moroy inflicted, in a most cowardly manner, a number of violent blows with his hands and feet causing severe injuries to his person; that while beating him, Moroy ordered the other employe of the defendant company, Gauthreaux by name, to take the keg and place it in the wagon and that it was returned to defendant by this employe as he was directed.

Defendant interposed an exception of no cause of action to plaintiff's demand and in the event of the court's overruling the exception, the defendant pleaded a general denial and especially averred that it is not liable for the acts of its employees, if they acted as charged in plaintiff's petition.

The testimony shows that plaintiff was assaulted, as charged, and that the remaining keg of beer of the four delivered by the driver to the employer of the plaintiff was taken, as alleged, and placed in defendant's beer wagon.

The responsibility, *vel non,* of the defendant for the act of its servant is the question for our decision.

The alleged offender was unquestionably in defendant's service. He drove its wagon and sold its beer, for which he received a salary of seventy-five dollars a month. The defendant had cash customers and credit customers. Before selling beer to a customer on credit, he was required to obtain the consent of the company. It had collectors to collect amounts due for beer sold on credit. This driver was instructed to collect cash from the customers to whom the beer was sold for cash. He had to account for this cash in the morning after the previous day's sale. It appears that plaintiff's employer was a cash customer of the defendant from whom cash was required.

We think it had been usual with the driver to sell beer to plaintiff's

employer on one day and return and collect the cash early the morning of the next day before settling with his (the driver's) employer. But whether this was usual or not, there can be no question but that on this occasion the driver delivered beer for an amount to be collected on the following business day. We are led to infer from the testimony that if delays were granted by the driver to the cash customers and a loss resulted, it was his loss. There was an agreement by which he was made to bear the loss, that is, it was deducted from his wages. The test of the liability is, in whose behalf was this employe acting and was it with the intention of serving the purposes of the employer.

The act of this driver was not in the furtherance of the company's business nor in the protection of its interests. The defendant had not sent him to collect, nor was it interested in recovering losses by pursuing the violent methods which it pleased the driver to pursue. The instructions of the company were to collect the cash at the time of the sale and to hand it over to the proper party the next morning. In order, as he wrongfully imagined, to make return in the morning as instructed, he resorted to violence. He thereby sought to protect his own interest, for his employer, whether rightfully or wrongfully, a question with which we are not, at this time, concerned, had made provision to protect itself in case of the driver's failure to settle for the beer sold. The driver, by his own agreement with the company, and by his own inexcusable violence, had placed himself, at least, one remove from his employer and from the scope or even course of his employment. The act committed was not the act of the master and received no sanction from him in any way. When the servant returned to the plaintiff's employer's place of business, i. e., to Cheever's saloon, it was for the purpose, as we interpret the testimony, of collecting, in order to avoid paying the amount himself. He had disregarded the instructions by delivering to this customer the kegs of beer before payment of cash. It was not to subserve the master's interests, but his own.

It is true that this court recently held, in a case against a railroad company for damages for wrongful ejectment of a trespasser by its brakeman, that the brakeman had authority, as an incident to his position, to remove a trespasser. The trespasser was riding on an iron rod touching or near the brakes and the running gear of which, to some extent, at least, he impliedly had charge. It was while in charge that the injury was inflicted and while seeking to protect the employer's property from the act of a trespasser. The running of the cars

would, we readily assume, be interfered with if trespassers were allowed to steal rides in the presence of, and without objection from, those in charge. He was not in any manner acting for himself. The servant was acting in the general scope of his employment. Dorsey vs. R. R. Co., 104 La. Reports.

On the contrary, in the case before us for decision, the driver was seeking to collect an amount which, in accordance with agreement, he would have been charged with if he had failed to collect it.

In Lafitte vs. Railroad Co., 43 Ann. 37, the court said that a conductor in changing money for passengers acts at his own risk and responsibility; that the company (as in the case here) loses nothing if counterfeit money is accepted by the conductor as he is charged with it, consequently the false charge brought by the conductor that the passenger had sought to pass counterfeit money on him was not a charge for which the company could be held liable.

In Williams vs. Palace Car Co., 40 Ann. 92, the court held that the employer is not liable in damages for the outrage to which the passenger had been subjected by the servant who was not acting within the scope of his employment, "that would be a dangerous ground for holding the employer responsible." Difficulties which might arise between the bank teller and the one who enters the bank for the purpose of collecting a check; the assault and battery committed by the clerk in a store, or the servant who answered the call for permission to see the master, are given as examples of acts for which the master could not be. held liable.

Plaintiff cites the case of Shea vs. Reems, 36 Ann. 1884, in support of the position that the driver here was, as in that, acting within the scope of his employment. No question but that in all matters relating to the driving of defendant's wagon and in selling beer as instructed, he was acting within the scope of his employment, but the servant here was not acting within the scope when he became a collector resorting to an outrage on the plaintiff to compel him to deliver up the property in order that he might lessen his own personal liability to the defendant, his employer.

The doctrine of *respondeat superior* applies to acts of an agent within the scope of his employment. Was the act here within the scope of the servant's employment? We have seen that he did not follow his employer's instructions and that, after having disregarded them, he sought to protect his own interests to the extent of committing an un-

lawful act. He did not commit this unlawful act under express or implied authority. Corporations are liable for the torts of their servants to the same extent as private individuals, but no further. If a servant goes outside of his employment without regard to his service, acting with malice, and wantonly causes damages to another, the master is not liable.

It is not contended that the defendant was sent for this beer. As we interpret the testimony, it made no difference to them whether or not he brought it back, as he was bound for it in case he did not return it, or he was bound to pay the price for which he was instructed to sell it. By the effect of the agreement between defendant and this servant, it had become the latter's business.

The unlawful assault was not in any manner necessary for the performance of the driver's work. A servant has implied authority to do what is necessary to protect his master's property or to fulfil the duties entrusted to him, but neither was sought to be done by this driver.

In another jurisdiction, it has been decided that where a person employed to collect payments for machines sold on the instalment plan, is instructed, in case of refusal to pay, not to touch the machines, or take them back, the employer is not liable for an assault committed by the servant or agent in connection with an attempt, not authorized, to seize the machine. Feneran vs. Singer Manufacturing Co., 47 N. Y. (S) 284, 20 App. Div. 574. Here there is analogy to the decision last cited in this: the kegs of beer had been delivered in accordance with the requirements of the defendant's business, but the cash had not been collected by the driver on delivery. The subsequent act was unauthorized and the master was no longer concerned, as the driver was bound for payment under the terms of his agreement.

We have reviewed all the decisions within our reach and have read several commentators upon the subject of the employer's liability, and have not found that the employer is to be held liable for acts of the employe not in line with his employment. If the servant steps aside from the scope of his own employment, actuated by personal malice or from motives of his own, he is, and the master is not, liable for the wrong committed.

For the reasons assigned, the judgment appealed from is affirmed.
Rehearing refused.