J. C. PENNEY COMPANY, Incorporated, a Corpo-
RATION, and OSCAR WHITWORTH, Appellants,
*v.* HARRY C. GRAVELLE, Respondent.

No. 3401

January 5, 1944.                    144 P. (2d) 487.

*Morse & Graves,* of Las Vegas, for Appellants.

*Thruston & McNamee,* of Las Vegas, for Respondents.

## OPINION

By the Court, DUCKER, J.:

We have before us a motion to strike parts of what is said to be the record on appeal.

This record consists of the judgment roll, a transcript of the proceedings certified by the court reporter, a paper denominated "Decision on Motion for a New Trial," and a large number of other papers, including the notice of appeal and undertaking on appeal. The transcript of the proceedings, and the other papers which purport to be the bill of exceptions, have not been settled and allowed by the judge or court or by stipulation of the parties. On the contrary, said record bears this notation: "Not settled by the court because not necessary as defined Anderson v. Snell [57 Nev. 78], 58 P. 2d 1041, and State v. Pansey, 61 Nev. 333 [128 P. 2d 464]. Dated this 14th day of September, 1943. George E. Marshall, District Judge."

The motion to strike is addressed to the transcript of the proceedings and all of said papers. It does not go to the judgment roll.

In its broadest scope the motion is based upon the ground that when the purported bill of exceptions was filed, the time for serving and filing the same had expired under section 9385.81, N. C. L. Suppl., and no valid order had been obtained under section 9385.87, N. C. L. Suppl., enlarging the time specified in the former section. The time specified therein is 20 days after final judgment, or if a motion be made for a new trial,

then within 20 days after service of written notice of the decision upon such motion, except as in subdivision (2) of said section 9385.81 otherwise provided, which is not applicable here. The appeal is from the final judgment and the order denying appellants' motion for a new trial. Written notice of the decision denying the motion for a new trial was served and filed on January 14, 1943, and appellants' proposed bill of exceptions was not served and filed until the 17th day of August, 1943. Consequently, the time specified in section 9385.81 had expired before such service and filings. However, there appears in the record before us the following order: "Order Enlarging Time For Defendant to Serve and File Bill of Exceptions. Upon motion of Harold M. Morse, Esquire, and Good Cause Appearing Therefor; Pltf not Appearing but Objecting. It is hereby ordered that the defendant, J. C. Penney Company, Incorporated, a corporation, and Oscar Whitworth, shall have to and including the 20th day of August, 1943, within which to prepare, serve and file their bill of exceptions to judgment rendered in the above entitled action, and to the order denying defendants' motion for a new trial. Dated: This 3rd day of August, 1943. George E. Marshall, District Judge."

If this is a valid order appellants' proposed bill of exceptions was served and filed in time. Said section 9385.87 provides: "The several periods of time specified in this act in reference to bills of exceptions only may be enlarged upon good cause shown by the court, any justice of the supreme court, judge, referee, or judicial official, or by stipulation of the parties."

Respondent contends that the order was void because there was no showing of good cause to authorize the trial court to enlarge the time; hence appellants' proposed bill of exceptions should be stricken. We do not think that a showing of good cause was necessary. The appellants were not in default when the order was obtained, and it recites that good cause appeared. There is nothing on the face of the order

or in the record indicial of the contrary. We should therefore presume in favor of the regularity of the action of the lower court; that it acted regularly and for sufficient cause. This presumption is strengthened by the fact that respondent had notice of the application for the order and declined to appear and contest it. This is plainly inferable from the recital in the order: "Pltf not appearing but objecting." The authorities relied on by respondent, Moyle v. McKean, 49 Utah 93, 162 P. 63; Ward v. Board of Trustees of Racine College, 176 Wis. 168, 185 N. W. 635; Wendlandt et al. v. Hartford Accident & Indemnity Co., 222 Wis. 204, 268 N. W. 230; Eskelinen v. Northwestern Casualty & Surety Co., 202 Wis. 100, 230 N. W. 33, present a different situation. In those cases the appellant was in default, in the Utah case, for not preparing and serving his proposed bill of exceptions within the time specified by statute, when the district judge allowed and settled the same, and in the Wisconsin cases he was likewise in default when the trial court settled the bill of exceptions. An altogether different rule is applicable as to a showing of good cause to excuse from a default than in the instant case.

When a default is involved the burden is on him who seeks to avoid its effect. The Nevada cases cited by respondent, the Virginia & Truckee R. Co. v. Henry et al., 8 Nev. 165, and State ex rel. Whalen v. Welliver, Chief of Police, et al., 60 Nev. 154, 104 P. 2d 188, 1016, are also not in point.

Another ground of the motion for striking appellants' bill of exceptions as a whole, is that it was not served on respondent. There is no merit in this. The record shows admission of service on August 17, 1943, and counsel for respondent also admits such service in his brief. It follows that the motion to strike, insofar as it includes the transcript of the proceedings certified by the court reporter, should be denied. It was not necessary that this should be settled and allowed by the court or judge. The certificate of the court

reporter was sufficient. The motion as to all the other papers is on the ground that the bill of exceptions as a whole was not settled and allowed by the other papers is on the ground that the bill of exceptions as a whole was not settled and allowed by the court or judge. As previously stated, these papers were not settled and allowed, and the reason given by the trial court was that it was not necessary because of the cases of Anderson v. Snell, supra, and State v. Pansey, supra. Counsel for appellant seems to share this conclusion. They are in error. Neither case holds to that effect, and the former is to the contrary. It was distinctly held in that case that, under the statute of 1935 then in force, only matters other than a transcript of the proceedings and not properly a part of the judgment roll, must be settled by the court or judge or by stipulation of the parties, to become a part of the bill of exceptions.

■ We therefore held against the contention that such a transcript of the proceedings when used as a bill of exceptions must be settled and allowed. The misconstruction of Anderson v. Snell by the trial court may have been due to the fact that, while the document filed as a bill of exceptions contained a number of other papers besides the judgment roll and the transcript of the proceedings, none of which had been settled and allowed by the court or judge, this court, notwithstanding, denied the motion to strike. But the motion was not levelled at these other papers. It was addressed to the document as a whole. It was denied because the judgment roll was properly a part of the record on appeal, as was the transcript of the proceedings. Had the motion been also addressed to the other papers they would have been stricken. The statement of the trial court that it was not necessary to settle the bill of exceptions, is contrary to the provisions of said section 9385.81 insofar as the papers other than the certified transcript of the proceedings are concerned.

State v. Pansey is a criminal case. It is no authority for the trial court's conclusion. Counsel for appellants, as appears from the record before us, presented to the trial court a proper form of certificate of settlement and allowance. They are nowise in fault and appellants are entitled to have settled and allowed a bill of exceptions. He has moved, under section 9385.85 N. C. L. for such order as may be proper in the premises. Said section in part provides: "* * * A judge, referee, or judicial officer may settle, allow, and certify to a bill of exceptions after he ceases to be such judge, referee, or judicial officer, *and if such judge,* referee, or judicial officer, before the bill of exceptions is settled dies, is removed from office, becomes disqualified, is absent from the state, *or refuses to settle and allow any bill,* or if no method is provided by law for the settlement of the same, *it shall be settled and certified in such a manner as the supreme court may by its order* or rules direct."

■ Pursuant to that part of the statute we have italicized, it is ordered that the record on appeal before us be returned by the clerk of this court to the clerk of the Eighth judicial district court of the State of Nevada, in and for the county of Clark, and the said district court or the judge thereof, is ordered to settle and allow appellants' bill of exceptions, whereupon the clerk of the said district court is directed to return said record on appeal to the clerk of this court.

Respondent is given twenty days from the settlement and allowance of the bill of exceptions to serve and file his answering brief.

### ON THE MERITS

January 29, 1945.                    155 P. (2d) 477.

*Morse & Graves,* of Las Vegas, for Appellants.

*Thruston & McNamee,* of Las Vegas, for Respondents.

**OPINION**

By the Court, DUCKER, J.:

Respondent, plaintiff in the court below, recovered damages in this action against both appellants for personal injuries suffered by him on account of an assault and battery alleged to have been committed by Whitworth while in the employ of the corporation as a clerk. The appeal is from the judgment entered on the verdict, and from the order denying the motion for a new trial. The charging part of the complaint, in substance, is as follows:

"That on the 12th day of February, 1943,  *  *  *  in the City of Las Vegas, County of Clark, State of Nevada, the defendant Oscar Whitworth, did make an unlawful, illegal, malicious, outrageous, wanton, violent, unwarranted and oppressive assault upon this plaintiff, and did recklessly, wantonly, shamefully, outrageously and maliciously beat, bruise and batter plaintiff in a cruel, inhuman, outrageous and shameful manner, while plaintiff was peacefully and lawfully going about his business thereat.  *  *  *  That said defendant, Oscar Whitworth, did grievously wound and injure plaintiff, and did strike, twist, jerk, knock down and kick plaintiff and otherwise seriously injure and damage him and willfully, wantonly, unlawfully, violently, oppressively and maliciously, bruise, batter, abuse and mistreat him; said defendant, Oscar Whitworth, using profane and

obscene language to and concerning plaintiff and generally heaping insults and abuse upon him while so doing the acts aforesaid, and that said defendant, Oscar Whitworth, twisted plaintiff's neck and arms, struck and battered plaintiff in the left eye, and kicked plaintiff in the side, ribs, hip and left ankle, while down, thereby causing him to suffer great bodily pain, injury and inconvenience, consisting of the following: One broken ankle, a cut under the left eyelid, a cut on his left ear, impaired vision in the left eye, and numerous severe bruises and lacerations all over his entire body, and has been totally incapacitated and confined to a bed in a hospital and/or at his home at all times subsequent to said assault and battery, and that plaintiff's nervous system was therefrom shocked, shattered and impaired, and he was prostrated by reason thereof.

"That the injuries * * * were the direct, natural and proximate result of the * * * acts of defendant, Oscar Whitworth, heretofore mentioned herein, and that solely on account of the said assault and battery, the injuries so suffered by plaintiff have caused him much severe pain and suffering, and have lessened his ability to earn a livelihood, in that he is informed and believes, and therefore alleges, that he will be totally incapacitated for at least three months from the date upon which he sustained said injuries, and that on account thereof and because of said pain and suffering, as well as the indignity and abuse heaped upon him by said defendant, Oscar Whitworth, this plaintiff has been actually damaged in the sum of Ten Thousand ($10,000.00) Dollars, no part of which has been paid.

"That the * * * acts committed by the defendant, Oscar Whitworth, as aforesaid, were committed in the direct and immediate presence of other persons and caused this plaintiff great embarassment, humiliation and mortification."

The complaint alleges that the acts charged upon appellant Whitworth were done in the course of his

employment by the appellant corporation, and were also ratified by that appellant.

The prayer is for judgment against both for the sum of $10,000 as actual, general or compensatory damages, and for the further sum of $10,000 as punitive, vindictive or exemplary damages. Appellants demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action. The demurrers were overruled and separate answers were filed denying generally the allegations of the complaint. The appellant corporation in its answer admitted that Whitworth was, on the 12th day of February, 1943, and now is employed by it as a clerk to sell merchandise in its store and premises at Las Vegas. This was also admitted in Whitworth's answer. The latter contained a cross-complaint in which it was alleged that on said date at Las Vegas, the said Gravelle did make an unlawful, illegal, malicious, outrageous, wanton, violent, unwarranted and oppressive assault upon Whitworth, by then and there holding, restraining, striking at, abusing and shoving him about the street and ridiculing him in the presence of divers persons on the street, and disarranging his clothing, and causing him extreme mental suffering and shock to his nervous system, by reason of which he was damaged in the sum of $10,000. Exemplary damages in the sum of $5,000 were also prayed for.

The jury returned a verdict against both appellants in the sum of $5,000.

■ Appellants' first assignment of error is that raised by their demurrers that the complaint does not state facts sufficient to constitute a cause of action. There is no merit in this criticism. A cause of action against the individual appellant for assault and battery is alleged with overparticularity and the complaint is sufficient to show liability of his employer. We need not resort to cases for this conclusion. Appellants' argument as to the insufficiency of the complaint against the employer goes more to the failure of the

evidence to show acts done in the course of employment and to show ratification by the employer. We will consider 'this objection presently under another assignment.

■■ The next assignment is that the court erred in permitting testimony over appellants' objection to respondent's reputation for truth and honesty, peace and quietude. Several witnesses testified that respondent's general reputation for peace and quietude was good in the community. It is a general rule that it is incompetent in a civil action for assault and battery to prove the general reputation of either party in the community for peace and quietude. But the complaint and cross-complaint herein, as well as the evidence adduced, show a cause which admits of an exception to that rule. A reference to those pleadings reveals that respondent and appellant Whitworth each charge the other with being an unprovoked aggressor in an assault and battery. Each introduced evidence to the same effect. In this situation the character of one or the other for peace and quietude might aid in determining the disputed question as to who was the actual aggressor in the affray. The reason for this exception is well stated in Breckenridge v. Drummond, 55 Okl. 351, 155 P. 555, 556, as follows: "It is contended that in a civil case the character of a party is not put in issue, and evidence as to character is not admissible. This is a statement of the general rule, but there are exceptions to it equally well supported as the rule. Under the issues raised by the pleadings and the evidence in this case, this testimony was competent and relevant, and therefore admissible under the exceptions to the general rule, for the reason that it would 'tend to assist the jury in deciding the disputed question as to who was the aggressor in the fight. It was claimed by the plaintiff that the assault and battery by the defendant was unprovoked; while the defendant claimed that the plaintiff provoked the assault and struck the first blow. As to who the aggressor was the testimony was conflicting,

and the general reputation of the parties to the fight for peace and quiet in the community in which they lived was competent and relevant to go to the jury in determining this controverted issue." See also Stiles v. Lile, 203 Ky. 225, 262 S. W. 18, and Cain v. Skillin, 219 Ala. 228, 121 So. 521, 64 A. L. R. 1022.

■ However, respondent's general reputation for truth, honesty and integrity in the community was not relevant. Such traits of character were not placed in issue by the nature of the action and were not otherwise admissible. But an examination of the record reveals that the question including such traits was not answered by the witness. Counsel for appellants interposed an objection and the question was reframed as follows: "Q. State to the court and jury what Mr. Gravelle's general reputation in the community where he has resided for twenty years, approximately, is. That is, is it good or bad?" The witness answered: "It is good." The question, as reframed, was objectionable on account of its generality, but no objection was taken to it, and appellants cannot complain now.

The next assignment of error is to the ruling of the court at the close of respondent's case denying motions to dismiss the complaint, and for a nonsuit by appellant corporation. The motion to dismiss is based on section 8985, N. C. L., and on the ground of respondent's refusal to subscribe to his deposition taken prior to the trial pursuant to stipulation. Section 8985 provides: "Disobedience to a subpena, or a refusal to be sworn or to answer as a witness, or to subscribe an affidavit or deposition when required, may be punished as a contempt by the court or officer issuing the subpena or requiring the witness to be sworn; and if the witness be a party, his complaint may be dismissed or his answer striken out."

■ There was no error in the court's refusal to dismiss the complaint. The ruling was made after the respondent's refusal to subscribe the deposition had

been duly explained in court. It appeared that his refusal was excusable. It was based on the contention that the deposition, after it had been transcribed by the stenographer who took it, contained certain answers set down as made by him, that were erroneous. The deposition was corrected in court according to his contentions and when corrected was subscribed by respondent. The ruling followed, and no objection was taken by appellants. There was naught in respondent's refusal to sign the deposition or proceedings in the court to prejudice appellants.

The motion for nonsuit was made on the ground that no testimony was introduced by respondent on his case in chief that in any way connected the appellant corporation as being liable for the acts complained of. It is contended that such testimony does not show that said acts were done in furtherance of the corporation's interest and within the scope of Whitworth's employment. The respondent does not dispute the rule of law asserted by the corporation as governing a masters' liability for a tort committed by his servant, but insists that said acts were done within the scope of employment and were also ratified by the corporation. This issue requires a brief résumé of the testimony before the lower court when the motion for a nonsuit was made.

■ On February 12, 1943, and for some time prior thereto, Whitworth was employed by the company as a clerk in its store at Las Vegas. At the time of the trial, which began on June 1 of that year, he was still employed there in that capacity. On the afternoon of the twelfth when he was attending to his duties in the store, one of the employees informed him that a man had walked out of the store with a suit of clothes belonging to the company, and that another employee, a woman, was following the man down the street and wanted Whitworth to come to her aid. He immediately went in pursuit of the thief, and catching up with him

something over a block away from the store, and near a Standard Oil service station, laid his hand on his shoulder and asked him where he got the suit. The thief threw the suit in the air and started running around an automobile and thence through the service station, with Whitworth in pursuit, crying to attendants to stop the thief. At this juncture respondent appeared in the picture and made some kind of an interference, either grabbing Whitworth by the arm or stepping between them or demanding to know what was going on, and the thief made his escape across the street. Respondent and Whitworth then had an interchange of words, the latter saying that he would have caught the thief if the former hadn't interfered, and the former replying that Whitworth could have caught him easy enough if he had wanted to. Whitworth picked up the clothing and the two walked along the street in the direction of the store, and continuing the altercation, which became more heated as they proceeded, until finally Whitworth handed the clothing to the assistant manager of the company, who had joined them, and engaged in the physical encounter with respondent out of which this action arose. In this encounter respondent was badly worsted. Whitworth suffered minor injuries. He was called by respondent and examined as an adverse witness under section 9420, N. C. L., as if under cross-examination. In addition to testifying to the nature of his employment by the J. C. Penney Company as a clerk in its store in Las Vegas, and giving other testimony included in the above review, stated in answer to a question as to why he went in pursuit of the thief: "I simply didn't like anyone walking out of the store with merchandise that didn't belong to them if I saw him." And again stated: "I only felt it my duty to take the merchandise and put it back in stock, where it belonged." "Q. You felt it was your duty to do so? A. That I should see to it, yes, sir."

We have included in this summarization substantially

all the testimony before the lower court when it passed on the motion of the company for a nonsuit, that had any bearing thereon. Was it sufficient to show liability on the part of the company? We may pass by the question whether it was within the scope of Whitworth's employment as a clerk to turn aside from the sale of merchandise and go from the store in pursuit of one who had stolen merchandise therefrom, to apprehend the thief and recover the property. He thought it was, as evidenced by his statements and actions. We need not inquire as to this because the controlling question is, was it within the scope of his employment to chastise respondent as shown by the latter's proof. We think not.

Before this occurred the chase was over, the hue and cry had ended, the quarry had escaped, the plunder had been recovered and was on its way back to the store; in fact, it had been handed over by Whitworth to the assistant manager of the company. The employer was no longer concerned. Whitworth had discharged his duty to his employer as he conceived it, except he had not captured the thief. His failure in this respect he charged to respondent's interference. They had walked about 75 feet from the place where the property was picked up, together towards the store, or practically together, engaged in a wordy war. Both were very angry when they came to blows. Whitworth's mental state at this time is pertinent to the inquiry, whether in the fight that ensued in which he caused respondent's injuries, he was acting for his own purposes or the purposes of his employer. How can it be inferred that he was promoting the interests of the employer in inflicting those injuries? It was not done to recover the property or to catch the thief, but apparently done to punish respondent for his officiousness and annoyance, or for attacking him as Whitworth testified. Viewed in this light, the assault and battery charged in the complaint, and testified to by respondent

and his witnesses, was unrelated to Whitworth's original purpose, in behalf of the company, and an independent adventure on his own account, in nowise arising from a sense of duty to his employer. True, he was then in the employ of the company, but he was not employed to commit an assault and battery. And it seems to us that such was clearly disconnected from the line of his duty to his employer, even if we conceded, without determining, that all that went before was within the scope of his employment. The acts not being within any express authority given by the company, nor within the scope of Whitworth's duty or employment, the principle of respondeat superior does not apply.

In Robinson v. Sears & Roebuck Co., 216 N. C. 322, 4 S. E. 2d 889, 890, a judgment of nonsuit as to a corporate defendant sued jointly with its servant for an assault and battery by the latter, was affirmed. The plaintiff there went to the store of the corporation to pay a bill and became involved in a controversy with the manager over the latter's language to a young lady employed in the office. The plaintiff and the manager went out the back door and engaged in a fist fight. The court held "that where an assault by an employee is purely personal, having no connection with the employer's business but a merely accidental or incidental one, the doctrine of respondeat superior is inapplicable and cannot be successfully invoked to support a recovery against the employer." The court cited a number of authorities to that effect. True, in the above case, the plaintiff testified that the conversation he had with the manager was about a personal matter and not about the business of the corporate defendant. But here, the evidence shows that the assault was over a personal matter arising not out of the employer's business or in the furtherance of its interests, but out of anger engendered by respondent's conduct toward the employee on the street. Among other cases holding to

the principle applicable here are McDermott v. American Brewing Co., 105 La. 124, 29 So. 498, 52 L. R. A. 684, 83 Am. St. Rep. 225; Kastrup v. Yellow Cab & Baggage Co., 129 Kan. 398, 282 P. 742; Crelly v. Missouri & Kansas Telephone Co., 84 Kan. 19, 113 P. 386, 33 L. R. A., N. S., 328; Hudson v. Missouri, K. & T. Ry. Co., 16 Kan. 470; Muller v. Hillenbrand, 227 N. Y. 448, 125 N. E. 808, 8 A. L. R. 1455.

In section 235, American Law Institute Restatement on Agency, it is stated: "An act of a servant is not within the scope of employment if it is done with no intention to perform it as a part of or incident to services on account of which he is employed."

The testimony viewed most favorably to respondent shows, as we have previously pointed out, that Whitworth, in inflicting injuries on respondent, intended to punish him for a personal grievance, and not to serve the company. Forrester v. Southern Pac. Co., 36 Nev. 247, 134 P. 753, 136 P. 705, 48 L. R. A., N. S., 1, on which respondent relies, is not in point. In that case it was held that the company was responsible in exemplary damages for the acts of its servant in wrongfully ejecting a passenger from its train for the nonpayment of a fare. It is enough to distinguish it that it belongs in a different class of cases from the instant one. There, the servant was acting within the scope of his employment, and the action was based upon a tortious breach of a carriage contract, and judgment of compensatory and punitive damages rendered on that ground. Whereas, in the instant case, the action against the employer is based on the tort of a servant acting outside the scope of his employment. It is not comparable to the Forrester case. As the company's liability was not established by respondent's proof, either directly or by ratification, as we will later show, the motion for a nonsuit should have been granted.

■ It is proper to inquire at this time if at any subsequent stage of the trial the defect in respondent's

proof was supplied. It is well settled that where defendant fails to stand on his motion for a nonsuit, but introduces evidence which supplies the defects in plaintiff's case, such evidence inures to plaintiff's benefit, and cures the defects so that it cannot be urged as a ground for a new trial. Power & Bro. v. Stocking et al., 26 Mont. 478, 68 P. 857; City v. Lewis, 34 Wash. 413, 75 P. 982; Reno Brewing Co. v. Packard et al., 31 Nev. 433, 103 P. 415, 104 P. 801. The only additional testimony touching the duties of Whitworth to that already stated was furnished by Mr. Harve Perry, manager of the company's store, a witness for appellants. He testified that Whitworth was employed as a salesman, and likewise orders and does stock keeping, which duties were performed in the store; that the general rule relative to what employees or assistants were supposed to do in the event some one stole merchandise in the store, was to prevent it; that instructions were to do this rather than to apprehend the thief; and that after it was prevented to call the police; and that Whitworth had no authority to pursue any one who stole property from the store.

It will be readily seen that this supplies no proof whatever that in the assault, Whitworth was acting within the scope of authority.

■ Ratification is claimed because of the testimony which shows that respondent, his wife, and one of his witnesses, informed the manager of the company of the circumstances of the assault and battery, and that notwithstanding, the company retained Whitworth in its employ and raised his salary from $150 to $175 per month. It also appears that Whitworth gave the manager his version of the affair and that the manager talked with every one he could contact that saw the fight.

We think that ratification is not inferable under these circumstances. If the manager believed Whitworth, as he had a right to, he could have well concluded

that Gravelle was the aggressor, and that Whitworth had done no wrong. But conceding that Whitworth was the aggressor, as the jury found, we do not think the company would have been justified in discharging a tried and useful servant who had proved his faithfulness by pursuing a thief and recovering the property, even if it could be said that by so doing he had gone outside the scope of his employment. As said in Kastrup v. Yellow Cab & Baggage Co., supra [129 Kan. 398, 282 P. 746]: "Notwithstanding his own fault, the servant may be a useful and deserving one, and worthy of promotion and encouragement. We do not think it either just to the individual, necessary for the general good, or a wise public policy, to so arbitrarily punish the master for lenity to a servant otherwise deserving, and perhaps penitent."

The fact that Whitworth was advanced in salary does not tend to prove ratification, even though it may have been because of his action in the matter of the theft. However, it may have been done in the ordinary course of employment and without any reference to the acts of the servant in that matter.

■ The next assignment pertains to certain statements by counsel for respondent in his argument to the jury concerning the company's financial ability to respond in damages. The court very properly, on objection being made at once, instructed the jury to disregard the statements. However, as the judgment against the company cannot stand, the question is moot.

■ The next assignment comprehends the giving of alleged improper instructions to the jury, and the refusal of the court to give forty-seven out of seventy-one instructions offered by appellants. We will not undertake to incorporate and discuss them in this opinion. Many of those refused state appellants' idea of the law as applicable to the company's liability. By reason of our decision as to that appellant, those are of no consequence, and as to the others complained of,

given or refused, it is enough to say that no prejudicial error appears, as to any of them. The jury was fairly instructed as to the law of the case so far as the individual appellant was concerned.

■ The assignment that the evidence was insufficient to support the verdict has already been disposed of as to the company. The evidence as to Whitworth is conflicting. According to the version of respondent and his witnesses, he was the victim of an unprovoked assault. The account of the affair as alleged in Whitworth's cross-complaint and testified to by him, and by appellant's witnesses, which presented a different view, was rejected by the jury. As there is substantial evidence to support a verdict for respondent against Whitworth, we cannot disturb the verdict rendered unless it proves to be excessive, or prejudicial error otherwise appears. It is insisted that the verdict for $5,000 is excessive and given under the influence of passion and prejudice. We do not think so. We think the jury was within the proper exercise of its discretion in finding that amount, and the trial court as well, in denying the motion for a new trial. Both actual and exemplary damages were recoverable under respondent's pleading and proof. The extent of his injuries was considerable, and his proof showed that these injuries were inflicted willfully and maliciously. He was struck by Whitworth ten or twelve times; knocked down by him three times and kicked by him several times. Besides, it showed that Whitworth applied abusive and insulting epithets to him on the street in the presence of other persons, which the jury had a right to conclude were highly humiliating and injurious to his feelings, as was the punishment he received.

There is no conflict in the testimony as to the extent of his physical injuries. In addition to suffering sundry bruises and lacerations, he sustained a partial dislocation of the left ankle and fractures of the joint, which required treatment by a physician. The doctor who

attended him testified that when respondent was brought to the hospital "he appeared to be in a daze and appeared to be suffering from a lot of shock and didn't respond well to questions. He seemed to be either in so much pain or so much shock from the injury that he was more or less blank at that time." The leg was placed in a cast at the ankle about the middle of February and kept so until the latter part of May. A great deal of pain was suffered throughout the treatment. After the cast was removed crutches were required for some time. The doctor further testified that the leg, by reason of the injury, would never be one hundred percent as good as previously.

■■■■ Respondent testified that he was in bed for four weeks, during which time the leg was elevated, and he suffered much pain and was still suffering pain at the time he gave the testimony. The jurors were the judges of his credibility. Under such proof, and the rule applicable, we are not prepared to say that the verdict is so flagrantly improper as to indicate passion or prejudice in the jury. A new trial may be ordered on the ground of excessive damages only when such damages appear to have been given under the influence of passion or prejudice. Stats. 1937, c. 32, p. 54.

■■ There is no merit in the contention that because the jury brought in a general verdict for $5,000, and did not bring in a special verdict as to exemplary damages, it must be assumed that their verdict was for actual damages, and consequently excessive.

No prejudicial error against the individual appellant is shown. It is therefor ordered that the judgment and order denying a new trial be and they are hereby affirmed as to him, and reversed as to the company.