ROCKY MOUNTAIN PRODUCE TRUCKING COMPANY; RADIO CAB COMPANY OF ELY, NEVADA; DOROTHY BLEDSOE (GRAY) AND V. P. ENCE, APPELLANTS, v. DONNA M. JOHNSON, WIDOW OF CARL E. JOHNSON, DECEASED, AND TOMMY CARL JOHNSON, DEBRA K. JOHNSON, JAMES RICHARD JOHNSON, CARL E. JOHNSON, MINOR CHILDREN OF DECEASED, CARL E. JOHNSON, BY THEIR MOTHER AND GUARDIAN AD LITEM, DONNA M. JOHNSON, RESPONDENTS.

No. 4405

February 20, 1962          369 P.2d 198

[Rehearing denied March 14, 1962]

*Gray and Horton,* of Ely; *Goldwater, Taber and Hill,* of Reno, for Appellants.

*A. D. Demetras,* of Ely; *Belli, Ashe & Gerry,* of San Francisco; *Bridwell & Reynolds,* of Salt Lake City, for Respondents.

## OPINION

By the Court, THOMPSON, J.:

Mrs. Johnson, widow of Carl Johnson, deceased, for herself and as guardian ad litem of their four minor children, commenced a wrongful death action against Rocky Mountain Produce Trucking Company, its agent-driver V. P. Ence, and Radio Cab Company of Ely, Nevada, and its agent-driver Dorothy Gray. The basis for the suit was the alleged negligent and wanton misconduct of each defendant. General damages of $200,000, and punitive damages of $50,000 were sought. The

decedent was a passenger in a car owned by him, but driven by Gordon Hildebrand.

The defendants answered the complaint by denying the charge of negligent and wanton misconduct, and pleaded three affirmative defenses; first, that the death of Carl Johnson was solely and proximately caused by the negligence of Hildebrand; second, that the death of Carl Johnson was contributed to by his own negligent failure to keep a proper lookout and to warn Hildebrand of any impending danger; and, third, that the negligence of Hildebrand was imputed to the deceased, Carl Johnson, by reason of the latter's ownership of the car in which they were riding. On the issues thus joined, the case was tried before a jury, and a verdict returned in favor of the defendants and against the plaintiffs.

The plaintiffs moved for a new trial. They contended that the trial court erred in the following particulars:

(1) In failing to give their requested instruction advising the jury that the contributory negligence of the driver Hildebrand would not bar a recovery from the defendants if the latter's misconduct was found to have been wanton. Coupled with this complaint was the contention that error occurred when the court instructed the jury that the contributory negligence of Hildebrand, if found to exist, would bar a recovery by plaintiffs.

(2) In failing to give their requested instruction regarding the "sudden peril" doctrine.

(3) In giving an instruction advising the jury that a rebuttable presumption existed that Hildebrand drove the car as the agent of Johnson, the passenger-owner; and that if Hildebrand was found, by a preponderance of the evidence, to have been negligent, and if said presumption was not rebutted, his negligence was to be imputed to the owner, Johnson.

(4) In giving an instruction regarding the "range of vision rule," i.e., that it is the duty of a driver in the nighttime to keep his vehicle under such control that he could stop within the distance the highway is illuminated by its lights.

The lower court granted a new trial for the sole reason that it had failed to instruct the jury that the contributory negligence of the driver Hildebrand would not bar a recovery from the defendants, if the latter's misconduct was found to have been wanton. The court acknowledged that the instruction offered by plaintiffs in this regard was not correct, but believed it to be the court's duty to have modified and given such instruction in correct form. The court found all other claims of error above set forth, (2), (3) and (4) to be without merit. From such order granting a new trial, the defendants below have appealed.

I. *The posture of this case on appeal:* As noted, the lower court did not order a new trial because of the insufficiency of the evidence to justify the verdict. Rather, it did so for the sole reason that it had failed to instruct the jury on one phase of the plaintiffs' theory of the case, namely, that the contributory negligence, if any, of the driver of the car in which the decedent was a passenger, would not bar a recovery by the plaintiffs, the heirs of decedent, should the jury determine that the defendants, or either of them, had been guilty of wanton misconduct. Our concern, therefore, is to review the record and determine whether the trial court abused its discretion in granting a new trial, either for the reason which it assigned, or for any other valid reason. Cf. Nevada Rock & Sand Co. v. Grich, 59 Nev. 345, 93 P.2d 513; Arrowhead Freight Lines v. White, 71 Nev. 257, 287 P.2d 718; Pagni v. City of Sparks, 72 Nev. 41, 293 P.2d 421; Schopper v. Kelley, 75 Nev. 520, 347 P.2d 279.

With this in mind, we turn to a statement of the facts, with particular emphasis upon those facts most favorable to the plaintiffs below, and respondents here.

II. *The facts surrounding the accident:* At about 11:00 p. m. on October 27, 1957, a car owned by Carl Johnson and driven by Gordon Hildebrand ran into the left rear end of an International tractor and trailer owned by Rocky Mountain Produce Company, and driven by V. P. Ence. Both vehicles were headed north

on U. S. Highway 93 toward Ely. At the time of this collision, a taxicab owned by Radio Cab Company and operated by Dorothy Gray was also at the scene.

The collision occurred about four miles south of Ely, at which point, and for several miles each way, the highway ran in a generally north-south direction. It was paved, 32 feet wide, and separated into two lanes by a white dividing center line. The east shoulder of the road at the scene of the accident was graveled and dropped off sharply. The road was dry, straight, and slightly upgrade to the north.

Sometime before the collision, the tractor-trailer, northbound, had run out of fuel. Ence, the driver, pulled the rig toward the right shoulder of the road, and parked it with its left wheels on the pavement and its right wheels on the unpaved shoulder. He caught a ride to Ely, obtained fuel, and had returned in the taxicab driven by Dorothy Gray when the Johnson vehicle, driven by Hildebrand, came upon the scene. Ence had just completed refueling the tractor, had started the motor, and had pulled the rig forward three to five feet when the collision occurred.

The impact was of such force that the car was demolished, the spring hangers of the trailer's left rear springs were sheared off, and the left rear dual wheels suspended by said springs driven forward underneath the frame of the trailer. Carl Johnson was killed.

Johnson, Hildebrand and others had been on a hunting trip and were returning to Ely. They had been drinking beer during the afternoon and evening. About 25 miles before the scene of the accident, Johnson asked Hildebrand to drive because he, Johnson, was tired. Hildebrand did so. Johnson moved to the middle of the front seat, with another of the hunting party, Merlin Wilks, to his right and also in the front seat. Hildebrand believed that Johnson and Wilks fell asleep sometime before the accident.

The matters just related are not in dispute. However, the position of the taxi and tractor-trailer on the highway immediately before and at the time of collision were; also, the circumstances with reference to lights.

In relating those circumstances, we shall refer only to the testimony most favorable to the plaintiffs' theory of the case.

About one mile before the scene of the accident, Hildebrand noticed the headlights of a car facing him. Hildebrand was then driving about 50 to 55 miles per hour. Those headlights were, thereafter, constantly within his view. At a point about one-quarter of a mile from them, he realized that the car was in his lane of traffic and at a standstill. He lowered his lights from high to low beam, illuminating the highway before him about 100 feet. He noticed that the lights of the car which he saw ahead of him were from the taxi which was parked alongside and to the west of the tractor in the northbound lane of traffic. He did not see clearance lights on the trailer. He reduced speed to about 15 miles per hour, pulled to the right and then turned to the left when he saw the rear end of the trailer, in an attempt to avoid a collision. The right front of the car hit the left rear of the trailer. Such are the relevant facts, stated most favorably to the plaintiffs, from which we must resolve the legal issue regarding wanton misconduct. In the discussion to follow, we shall refer to the plaintiffs below, respondents here, collectively as "Johnson"; the defendants below (principal and agent), appellants here, as the "Taxi" and "Rocky Mountain"; the decedent, Carl Johnson, as "passenger-owner"; and the driver Gordon Hildebrand as "Hildebrand."

III. *Was the issue of wanton misconduct one of fact or law?* Before discussing this issue, we wish to resolve a confusion in the use of language. In Crosman v. Southern Pacific Co., 44 Nev. 286, 301, 194 P. 839, 843, this court used interchangeably and without distinction, the terms "wanton conduct" and "wanton negligence." Other courts have done the same. Though a matter of semantics, we believe a confusion has arisen because of such usage, and desire to resolve it. Accordingly, we repudiate the use of the term "wanton negligence." We consider the following language of Justice Traynor in

Donnelly v. Southern Pacific Co., 18 Cal.2d 863, 869, 118 P.2d 465, 468, 469, most helpful:

"Negligence is an unintentional tort, a failure to exercise the degree of care in a given situation that a reasonable man under similar circumstances would exercise to protect others from harm. Rest. Torts, secs. 282, 283, 284; Prosser, Torts, sec. 30 et seq. A negligent person has no desire to cause the harm that results from his carelessness. Rest. Torts, sec. 282(c). And he must be distinguished from a person guilty of willful misconduct, such as assault and battery, who intends to cause harm. Prosser, Torts, p. 261. Willfulness and negligence are contradictory terms. Kelly v. Malott, 7 Cir., 135 F. 74; Neary v. Northern Pac. R. Co., 41 Mont. 480, 110 P. 226; Michels v. Boruta, Tex.Civ.App., 122 S.W.2d 216. If conduct is negligent, it is not willful; if it is willful, it is not negligent. It is frequently difficult, however, to characterize conduct as willful or negligent. A tort having some of the characteristics of both negligence and willfulness occurs when a person with no intent to cause harm intentionally performs an act so unreasonable and dangerous that he knows, or should know, it is highly probable that harm will result. Rest. Torts, sec. 500 et seq; Prosser, Torts, pp. 260, 261. Such a tort has been labelled 'willful negligence', 'wanton and willful negligence', 'wanton and willful misconduct', and even 'gross negligence.' *It is most accurately designated as wanton and reckless misconduct.* It involves no intention, as does willful misconduct, to do harm, and *it differs from negligence in that it does involve an intention to perform an act that the actor knows, or should know, will very probably cause harm.* See Kastel v. Stieber, 215 Cal. 37, 46, 8 P.2d 474; Albers v. Shell Co., 104 Cal.App. 733, 286 P. 752; Tognazzini v. Freeman, 18 Cal.App. 468, 123 P. 540; 45 C.J. 674. Wanton and reckless misconduct is more closely akin to willful misconduct than to negligence, and it has most of the legal consequences of willful misconduct."

Thus we see that wanton misconduct involves an intention to perform an act that the actor knows, or

should know, will very probably cause harm. In substance, this is the same definition approved by this court in Crosman v. Southern Pacific Co., supra, where it was stated, "* * * the party doing the act, * * * though having no intent to injure, must be conscious from his knowledge of surrounding circumstances and existing conditions, that his conduct will naturally and probably result in injury."

We turn now to a discussion of the question posed: Was the issue of wanton misconduct one of fact or law? The mere allegation of wanton misconduct does not entitle the one seeking relief to a jury instruction thereon. However we are mindful of the following well recognized principles: Each party to a lawsuit is entitled to have the jury instructed on all of his theories of the case that are supported by the pleadings and the evidence. Dearden v. Galli, 70 Nev. 543, 277 P.2d 381; Phillips v. G. L. Truman Excavation Company, 55 Cal.2d 801, 13 Cal.Rptr. 401, 362 P.2d 33. A court should not instruct a jury on a theory of the case which is not supported by any evidence. Nevada Transfer & Warehouse Co. v. Peterson, 60 Nev. 87, 90, 107, 89 P.2d 8, 99 P.2d 633, 640; Wyatt v. State, 77 Nev. 490, 367 P.2d 104; State v. Alsup, 69 Nev. 121, 243 P.2d 256; State v. Moore, 48 Nev. 405, 233 P. 523. If reasonable minds might differ in drawing a conclusion from the facts presented, a jury should be permitted to decide the issue, as an issue of fact. On the other hand, if reasonable minds should not differ in drawing a conclusion from the facts presented, a court should decide the issue, as a matter of law. Kuser v. Barengo, 70 Nev. 66, 254 P.2d 447; Gordon v. Cal-Neva Lodge, Inc., 71 Nev. 336, 291 P.2d 1054; Wilson v. Payne, 74 Nev. 312, 330 P.2d 120; Troop v. Young, 75 Nev. 434, 345 P.2d 226.

All agree that the contributory negligence, if any, of Hildebrand, though a defense to a claim for relief, based upon negligence, was not a defense to a claim for relief based upon wanton misconduct. Crosman v. Southern

Pacific Co., supra; dictum in Cox v. Los Angeles & Salt Lake Railroad Co., 56 Nev. 472, 56 P.2d 149; annot. in 38 A.L.R. 1424; 72 A.L.R. 1357; 92 A.L.R. 1367; 119 A.L.R. 654. Therefore, if the facts heretofore related would permit reasonable minds to draw different conclusions on the issue of wanton misconduct, the lower court was correct in ordering a new trial to permit a jury, as the trier of fact, to determine that issue. On the other hand, if such facts would not permit reasonable minds to conclude differently on that issue, the court below should not have granted a new trial for the reason it gave (i.e., for its failure to properly instruct the jury that the contributory negligence of Hildebrand, if any, would not bar a recovery by the plaintiffs if the defendants, or either of them, were guilty of wanton misconduct), for such issue would be a matter of law solely for the court's determination.

Without question, it is difficult for an appellate court to announce what "reasonable minds" would conclude from a given factual presentation. Yet, such is our obligation. Upon the record before us, we cannot conclude that reasonable men would view the issue of wanton misconduct differently. In our judgment, reasonable minds would not label the conduct of either the Taxi or Rocky Mountain to be the kind of conduct that the "actor knows, or should know, would very probably cause harm" to another. The driver of each, before and at the time of collision, knew: that the southbound lane of traffic was open for traffic; that the area of their presence was lighted by the headlights of the Taxi, if not by the tractor-trailer; that the road was straight, slightly upgrade, and dry; that any car coming from the south would, or should, observe the lights of the Taxi for a great distance before approaching the area occupied by the Taxi and rig, and should act accordingly. In the light of such knowledge and circumstances, we hold that wanton misconduct did not exist as a matter of law. Cf. Crosman v. Southern Pacific Co., supra, where this court affirmed a judgment of nonsuit entered against the plaintiff, believing the evidence insufficient, as a matter of law, to establish

*wanton misconduct;* Mitrovich v. Pavlovich, 61 Nev. 62, 114 P.2d 1084, where this court affirmed a court judgment for defendant, holding, as a matter of law, that the facts there involved did not establish either *willful* or *wanton misconduct* under California law; Hart v. Kline, 61 Nev. 96, 116 P.2d 672, where this court affirmed a judgment of nonsuit entered against the plaintiff, holding, as a matter of law, that the facts did not present a case of either *gross negligence* or *willful misconduct;* Garland v. Greenspan, 74 Nev. 88, 323 P.2d 27, where this court affirmed a court judgment for defendant, holding, as a matter of law, that neither *gross negligence* nor *willful misconduct* had been established.[1] We shall mention briefly the single authority relied upon by Johnson to support her contention that the issue of wanton misconduct was one of fact and should have been submitted to the jury. That case is Adkisson v. Seattle, 42 Wash.2d 676, 258 P.2d 461, and is so dissimilar factually as to be of no assistance. There, a pile of dirt had been left on the street by defendants while in the course of sewer and water main construction. It was unguarded, and without lights. Its presence was unknown. Vehicles came upon it suddenly and without warning. Such are not the facts of the case before us.

In our view, the defendants were not guilty of wanton misconduct. The claim for relief on that ground was not established, as a matter of law. The court below was correct initially when it declined to submit such an instruction to the jury.[2] In granting a new trial because of its failure to submit such issue to the jury, the lower court abused its discretion.

---

[1] The cases cited are not factually similar to the case at bar. Citation is made solely to mention some instances where the Nevada court has found that either gross negligence, wanton misconduct, or willful misconduct did not exist as a matter of law.

[2] The court did instruct regarding punitive damages. This was error, NRS 41.090; Benner v. Truckee River General Electric Co., 9 Cir., 193 F. 740, but harmless, because defendants prevailed. Johnson v. Batteen, 144 Neb. 384, 13 N.W.2d 625; Gower v. Trumbo, 181 S.W.2d 653 (Mo. 1944).

Though we have determined that the reason assigned by the court below for granting a new trial was incorrect as a matter of law, there may have been other reasons for such action which have merit. We must, therefore, examine such other reasons advanced by Johnson, plaintiffs below and respondents here, urging that a new trial was required in any event.

IV. *Was it error to refuse an instruction on the "sudden peril" doctrine?* In support of the motion for new trial, and again on appeal, Johnson urged that the jury should have been instructed regarding the "sudden peril" doctrine. The evidence most favorable to Johnson's theory of the case reveals that the driver, Hildebrand, saw the lights of the taxi when he was one mile away from it; that when he was one-quarter of a mile from the taxi he knew that it was in his lane of traffic and at a standstill. Under such circumstances, it is manifest that Hildebrand was not confronted with a sudden and unexpected peril. Cf. Kuist v. Curran, 116 Cal.App.2d 404, 253 P.2d 681; Fraser v. Stellinger, 52 Cal.App.2d 564, 126 P.2d 653, where a truck driver had a bicyclist in view for 1,000 feet before collision, and the court held that it was proper not to instruct regarding imminent peril; Dougherty v. Ellingson, 97 Cal.App. 87, 275 P. 456, where the court noted that the driver saw "the other automobile in ample time to have prevented the collision, and was not suddenly confronted with peril." The lower court correctly refused to instruct the jury regarding the sudden peril doctrine.

V. *Was it error to instruct the jury that a rebuttable presumption arose that Hildebrand drove the car as the agent of the owner, Carl Johnson?*

The instruction in this regard, of which Johnson complained in urging a new trial, and now urges to support the order for new trial, reads: "The evidence shows in this case that at the time the accident occurred, Carl E. Johnson, the owner of the Chevrolet automobile, had requested Gordon Hildebrand to drive it and that

while it was being so driven, the owner remained in the vehicle as a rider therein. Under such circumstances, it is presumed that the driver was operating the vehicle as the agent of the owner, and if you should find by a preponderance of the evidence that the driver, Gordon Hildebrand, was negligent in the operation of the Chevrolet automobile, such negligence is imputed to the owner, Carl E. Johnson.

"If you find, however, from a preponderance of the evidence, that Carl E. Johnson permitted Gordon Hildebrand to drive his automobile, and in so doing, he did not retain control of the direction over the automobile while Gordon Hildebrand was driving it, then you may find the presumption of agency is rebutted, and regardless of whether Gordon Hildebrand was negligent or not, it cannot be imputed to Carl E. Johnson to deprive Plaintiffs of any damage to which you might otherwise find them entitled under these instructions."

This court has not heretofore passed upon the propriety of such instruction or the principles of law therein announced. True, this court in Zimmerman v. District Court, 74 Nev. 344, 347, 348, 332 P.2d 654, 656, recognized what appeared to be the weight of authority, when it said: "Despite numerous cases to the contrary, we concede that in most jurisdictions in this country, where the owner-driver situation exists, a principal-agent relationship (and therefore an owner liability) is presumed. But whether this be a fact inference, or a policy presumption, or an administrative presumption, or one arising out of expediency (the cases are replete with abstract and academic discussions of its nature) its basis is the inference (or the presumption, if one prefers) that an owner is likely to be in control of his own property." See Annots., 147 A.L.R. 960, 50 A.L.R.2d 1281. However, Zimmerman neither approved nor rejected the apparent weight of authority for such issue was not before it for determination. We must do one or the other here.

Johnson asked Hildebrand to drive, because he, Johnson, was tired. Sometime after Hildebrand assumed the wheel, but before the accident, Johnson fell asleep; at

least, such was Hildebrand's belief. The jurors, as the exclusive judges of the credibility of the witnesses, were at liberty to either accept or reject such testimony. J. C. Penney Co. v. Gravelle, 62 Nev. 434, 439, 455, 144 P.2d 487, 155 P.2d 477, 484; Jones v. Golick, 46 Nev. 10, 21, 206 P. 679, 682. However, by reason of such evidence, it is strenuously urged that to impute the negligence of the driver to the owner-passenger would result in a manifest injustice, for the sleeping owner-passenger could not have been exercising control over the driver at the time of accident. This argument is premised upon the case of Johnson v. Los Angeles-Seattle Motor Express, Inc., 222 Ore. 377, 352 P.2d 1091. However, the instruction under consideration in that case was quite different from the one given in the case before us in that the jury was told that the negligence, if any, of the driver was imputable to the owner-passenger as a *matter of law*. For that reason, the reviewing court reversed and remanded for a new trial. However, in the instant case, the jury was told that it could find an imputation of negligence if the presumption of agency by reason of car ownership was *not rebutted,* but that it could not do so, if it determined that such presumption was rebutted. Accordingly, the question of whether the negligence of Hildebrand, if any were found, would be imputed to the owner-passenger to bar a recovery by his heirs, became a *question of fact* to be determined by the jury in the light of all relevant circumstances presented.

In deciding whether Nevada should follow the weight of authority, as expressed in the instruction before us, or adopt the minority point of view, as set forth in Peterson v. Schneider, 154 Neb. 303, 56 N.W.2d 107; and Davis v. Spindler, 156 Neb. 276, 47 N.W.2d 863, cited by Johnson, we are essentially confronted with the problem of fairness in presenting proof. Ownership implies the right of control of the driver, which right, in common experience, is frequently exercised. Whether such right of control was actually exercised in a particular case depends upon the facts disclosed. In the normal course of events, knowledge of such facts is

within the possession of the occupants of the car, and is not in the possession of others. Therefore, in the matter of proof during trial, basic fairness appears to require a rebuttable presumption of agency, thus casting the burden upon those with presumed knowledge of the facts to come forward with evidence to overcome such presumption. We understand this to be the reason for the so-called "weight of authority" view, and the meaning of the instruction before us. We accept the instruction as a correct statement of the law to the facts before us, and find that it was properly given to the jury in this case.

VI. *Was it error to instruct the jury regarding the "range of vision" rule?*

In moving for a new trial, Johnson urged that error occurred when the court gave the following instruction: "It is the duty of a driver of a motor vehicle using a public highway in the nighttime to be vigilant at all times and to drive at such rate of speed and to keep the vehicle under such control that, to avoid a collision, he can stop within the distance the highway is illuminated by its lights."

Following argument on the motion for new trial, the court ruled that the quoted instruction was properly given, though it ordered a new trial for a different reason, as heretofore discussed. In seeking to support the order for new trial, Johnson again urges that error resulted from the giving of said instruction.

The great weight of authority has accepted the "range of vision" rule. See Annots., 44 A.L.R. 1403; 58 A.L.R. 1493; 87 A.L.R. 900; 97 A.L.R. 546. This court approved it in Burlington Transportation Company v. Wilson, 61 Nev. 22, 24, 110 P.2d 211, 114 P.2d 1094. However, Johnson asks that we discard the rule, citing cases in which it was not applied. Under the facts of this case, there is no cogent reason for refusing application of the rule. The road was straight and slightly upgrade; the elements did not diminish visibility; Hildebrand was aware of lights on the highway before him when he was about one mile away, and, at a point about one-quarter of a

mile distant, knew that a vehicle was in his lane of traffic and at a standstill, whereupon he dimmed his lights and reduced his speed. We are not aware of a case which has found it to be error to instruct a jury regarding the "range of vision" rule under such circumstances. Indeed, the facts as disclosed by the trial court's findings of fact in Burlington Transportation Co. v. Wilson, supra, are not as strong for the application of the rule as are the facts of the instant case.

We conclude that the court below was right in refusing to instruct the jury regarding the "sudden" peril doctrine; that it was correct in giving to the jury the instructions concerning a rebuttable presumption of agency arising from the owner-passenger and driver relationship with a resulting imputation of negligence should the jury determine that such presumption was not satisfactorily overcome; that it was correct in instructing the jury as to the "range of vision" rule; but that it abused its discretion in granting a new trial for the assigned reason because, as a matter of law, there was no evidence from which reasonable minds could conclude that the defendants below, or either of them, were guilty of wanton misconduct.

Reversed.

BADT, C. J., and MCNAMEE, J., concur.